### AMERICAN PRESERVERS' TRUST *v.* TAYLOR MANUF'G CO. *et al.*

*(Circuit Court, E. D. Missouri, E. D.    May 18, 1891.)*

1. CORPORATION—CONTRACT—AGENCY.
    Where a bill for injunction avers that a certain agreement, though signed only by the stockholders of defendant company, was in fact executed for and on behalf of the company, and that the stockholders were duly authorized and empowered to act for the company, and that the company had received the proceeds of the consideration of such agreement, it cannot be held on demurrer that the company is not bound by the agreement simply because its name is not appended thereto, and such agreement purports to be only the individual undertaking of certain stockholders.

2. SAME—ULTRA VIRES—TRUST COMBINATION.
    A trust agreement by which the stockholders of seven corporations, situated in different parts of the country, acting for their respective companies, authorize trustees to purchase stock, bonds, or property of any corporation or firm engaged in a certain business; to issue trust certificates therefor; to organize corporations to carry on such business; to exercise control over corporations by the purchase of their stock; to sell any property other than stocks, and receive the purchase money, and to receive the dividends on stock, interest on bonds, etc.; and, after paying the expenses of the trust, to declare dividends on the trust certificates,—is beyond the corporate powers of a Missouri corporation; and a covenant made by it, in consideration of admission to the trust and of the benefits to be derived by its stockholders from the trust agreement, that it would not engage in the business for which it was organized for a period of 25 years, is void, and the company will not be restrained by injunction from violating it.

In Equity.    Bill for injunction.

*A. Leo Weil, C. H. Krum, Frank Ryan,* and *James O. Broadhead,* for complainant.

*Judson & Reyburn,* for defendants.

THAYER, J.    This case was before the court on a former occasion on an application for a preliminary injunction.    The bill has since been amended, and the questions now to be determined arise on a general demurrer to the complaint.

1. An injunction was refused because it did not appear, when such an order was applied for, that the Taylor Manufacturing Company had signed or had become bound by the "agreement of co-operation" (as it is termed) of date May 15, 1889. *Vide* 43 Fed. Rep. 711. The bill has been so amended as to overcome that objection, at least on demurrer. It is now averred that that agreement, though it was only signed by stockholders of the manufacturing company, was in fact "executed for and in behalf of said company," and that said stockholders "were duly authorized and empowered to so act for the company," and that the company "received the proceeds of the sale of the trust certificates," which formed a part of the consideration for executing the agreement of co-operation. In view of these allegations, it cannot be held, on demurrer, that the corporation is not bound by the agreement of co-operation, merely because its name is not appended to the agreement, or because the agreement on its face purports to be the individual obligation of certain of its stockholders. When a contract is one which a corporation is empowered to make, and has in fact authorized to be made for its benefit, but in the name of some other person or persons, it may be held liable thereon. So far as natural persons are concerned, it is usually immaterial by what name they see fit to evidence their assent to a contract, providing they do assent and intend to become bound; and the same doctrine has been held applicable to corporations. *Melledge* v. *Iron Co.*, 5 Cush. 158; *Carroll* v. *Society*, 125 Mass. 565.

2. It accordingly becomes necessary to consider the case upon the assumption that the Taylor Manufacturing Company executed the agreement of co-operation, and thereby covenanted "that for the period of twenty-five years  *  *  *  it would not, within the territory of the United States of America, engage  *  *  *  in the manufacture or sale of preserves, jellies, fruit butters," etc. According to the averments of the bill, the agreement of co-operation was executed "in compliance with and in pursuance of" a promise to execute such an agreement, made by the Taylor Manufacturing Company, when it became a member of the "American Preservers' Trust," and signed the articles of association. It appears that the execution of that agreement was one of the conditions upon which the manufacturing company was allowed to become a member of the trust, and to share in the benefits incident to such membership. It follows, that the consideration supporting its covenant to discontinue the manufacture and sale of preserves was not merely the sum of money received for its plant, tools, brands, and trade-marks, but the consideration consisted in part of advantages gained, or supposed to have been gained, by admission to the trust. For the purposes of this decision, therefore, the "trust agreement," executed some time in the spring of 1888, and the "agreement of co-operation," executed in May, 1889, must be treated as part and parcel of the same agreement. The terms of both agreements were assented to at the same time. It was made a condition, when the Taylor Manufacturing Company was admitted to the trust, that it should enter into a covenant (termed an "agreement of co-operation") to discontinue one branch

of its business, which covenant it subsequently executed. In its legal aspects, therefore, the case presents the same features that it would present if the covenant which complainant seeks to enforce had been incorporated into the trust agreement.

3. The next question to be considered is whether the trust agreement, as described in the bill, was one to which the Taylor Manufacturing Company, a corporation created by the laws of the state of Missouri, could lawfully become a party. It seems that the American Preservers' Trust was an organization formed originally by the stockholders of seven foreign corporations located in different parts of the United States, all of which were engaged in the fruit-preserving business. Whether the foreign corporations themselves executed the articles of association is not explicitly stated, but the fair inference is that they did. The articles of association (hereafter and heretofore also termed the "trust agreement") provided that they should take effect 60 days from the time those holding the majority of the stock of the seven foreign corporations aforesaid should have transferred their stock to a board of nine trustees, also named in the articles. Without going too much into detail, it will suffice to say that the trust agreement authorized the trustees (as soon as the articles took effect) to prepare and issue trust certificates for stock, bonds, or other property at any time transferred or assigned to them, such certificates to be based on the estimated earning capacity of the property so acquired. They were also authorized to purchase the stock, bonds, property, or business of any corporation or firm engaged in the fruit-preserving business, that was not originally concerned in the trust, or to lease the property of any such company or firm; also to organize corporations to carry on the fruit-preserving business; also to exercise control over corporations by means of the acquisition of their stock; also to sell any trust property in their possession, other than stocks, and to receive the purchase money; also to receive and collect dividends on stocks, and interest on bonds, and out of the money so received on account of sales, dividends, or interest, after paying the expenses of the trust, to declare dividends on the trust certificates, which they had themselves issued and put in circulation. It is obvious, I think, that the trustees (so termed in the trust agreement) were in reality the agents of those persons, firms, and corporations who had signed such agreement, and had attempted to confer upon the trustees the extensive powers last described. It is furthermore obvious that the Taylor Manufacturing Company, by signing the trust agreement, even after the trust had taken effect, or had become established, made itself a party thereto, (so far as it was able to do,) and became one of the principals by whom the agency in question was created. Now, it is a proposition which admits of little doubt, that the Taylor Manufacturing Company exceeded its powers in signing and becoming a party to the trust agreement. By so doing, it in effect united, with the other corporations and individuals who signed the agreement, in creating a partnership or joint-stock concern, and in furtherance of that enterprise it undertook to appoint agents to manage the concern in its behalf, and to vest such agents with authority to buy and lease prop-

erty in all parts of the United States, to obtain and exercise control over other corporations by acquiring their stock, and with power likewise to issue negotiable securities without limit, and to declare dividends thereon. In all of these respects I must conclude that the defendant corporation, by executing the trust agreement, undertook to exercise powers to which it could lay no reasonable claim by virtue of the law under which it is organized, and from which all of its powers are derived. Some stress was laid in the argument upon the allegations of the bill that the trust was formed for the purpose of securing "an economical, proper, and satisfactory conduct" of the fruit-preserving business, and "an intelligent co-operation in the business of manufacturing preserves;" also upon the further allegation that the effect of the association "has been to create a better market for the sale of green fruits,   *   *   *   and more economical methods of manufacture, and to produce a better class of goods, free from deleterious substances," etc. This may be true, but the matters so alleged are not material to the present inquiry. The question now before the court is whether a business corporation, organized under the laws of this state, has the right to become a member of such an association, or to appoint agents with such extensive powers, and that inquiry must be answered in the negative. *People* v. *Refining Co.*, 121 N. Y. 582, 24 N. E. Rep. 834; *Mallory* v. *Oil-Works*, 86 Tenn. 598, 8 S. W. Rep. 396; *State* v. *Distilling Co.*, (Neb.) 46 N. W. Rep. 155; *Mills* v. *Upton*, 10 Gray, 596.

4. The ultimate question is whether the covenant to discontinue one branch of its business, made under the circumstances and for the considerations disclosed by the bill, can be enforced in equity against the defendant corporation. An injunction as prayed for, if granted, will operate, of course, as a specific enforcement of the covenant; and the general rule is that agreements will not be specifically enforced that are inequitable, or tainted with illegality, or that are in excess of corporate powers. As the case is stated in the bill, the only fair pretense that there seems to be for seeking equitable relief is the fact that the Taylor Manufacturing Company still retains the money that it received for the transfer of its manufacturing plant. But it must be borne in mind, as heretofore shown, that the money so received for the transfer of its plant was not by any means the sole consideration upon which it covenanted to discontinue the manufacture and sale of preserves. One of the inducements held out to it for entering into that covenant was the advantage that would result to it or to its stockholders from its becoming a member of the trust, and enlarging the sphere of its operations through the agency of that organization; but, as it now appears, the defendant company had no right to become a member of the trust, and all its acts done in that behalf were *ultra vires*, if not positively illegal. In view of the unlawful character of the transaction out of which the covenant arises, I conclude that a court of equity would not be warranted in enforcing it by injunction, even though the defendant company has received, and still retains, a portion of the consideration which induced it to execute the covenant.

The demurrer to the bill is accordingly sustained.