## CHERRY v. CITY NAT. BANK OF KANSAS CITY, MO.

(Circuit Court of Appeals, Eighth Circuit. April 4, 1906.)

### No. 2,296.

1. BANKS AND BANKING—AUTHORITY OF OFFICERS—BORROWING MONEY.
      The executive officers of a national bank may legitimately borrow money for the bank's use, in the usual course of business without special authority from their board of directors.

2. SAME—CONVERSION BY CORRESPONDENT—FICTITIOUS DEPOSIT.
      The president of a national bank discounted his note with a correspondent bank under an agreement by which the latter placed the proceeds to the credit of his own bank in a special account which was not subject to check, but was to be held to meet the note at its maturity. The books of his bank showed the amount as a deposit in its general account with the correspondent, the purpose being to deceive the examiner. On the failure of his bank the correspondent charged the note to the special account in accordance with the agreement. Held, that the amount to the credit of the insolvent bank in such account did not in fact belong to it, but remained the property of the pretended lender; the whole transaction being merely a subterfuge, and that its application to the payment of the note was not a conversion.

3. SAME.
      If the transaction be regarded as a real, and not a pretended, loan, it was one made for the benefit of the borrowing bank, and not of its president, and its application to the payment of his note, which was in reality that of the bank, was within the right of the lender.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Charles B. Ames and W. C. Scarritt (Dennis T. Flynn, on the brief), for plaintiff in error.

Charles A. Loomis and John A. Eaton, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a suit brought by the receiver of the Capitol National Bank of Guthrie, Okl. T., plaintiff in error, against the City National Bank of Kansas City, Mo., to recover money alleged to have been standing to the credit of the Guthrie Bank in the Kansas City Bank and by the latter unlawfully appropriated to the payment and satisfaction of personal notes held by it and made by one Billingsley, the president of the Guthrie Bank. A jury was duly waived. The court tried the action, made a special finding of facts and rendered judgment in favor of the defendant. It appears that the business of the Guthrie Bank with defendant bank and others had for a long time been conducted and largely controlled by Billingsley, its president; that he had taken special charge of negotiating and making loans for his bank; that for nearly two years before the occurrence of the transaction involved in this case the Guthrie Bank had been a borrower of money, obtaining it by issuing and selling its certificates of indebtedness to other banks and taking credit therefor in account current with the banks buying them, and also by executing and selling its promissory notes. The proceeds of all notes so negotiated were kept and handled by the bank in the individual name of its president. This was done to obviate the appearance of a bills payable account. Some time before September, 1903, a National bank examiner had made an examination of the Guthrie Bank and had condemned three certain loans, each for $10,000, as excessive, within the meaning of section 5200 of the Revised Statutes. Thereupon, on September 4, 1903, Billingsley wrote Mr. Strean, the cashier of defendant bank, the following letter:

"Capitol National Bank, Guthrie, Okla., September 4, 1903.

"Friend Strean: My stenographer is not on deck, so you will have to try and read my scrawl. I want you to take my note of 30,000.00 and Cr my Bank with like amount in a special account with the understanding that said account is not to be checked against. My reason for wanting this is that I have that amount of excessive loans that the Department is kicking about, and I will be unable to reduce them to limit for 3 or 4 months. But do not want make a discount and pay interest when it is not necessary. Will you do this for me? I have handled this before in this way with our old K. C. account, so suppose it will be all O. K. with you as you will not be out any money and loan and deposit will offset each other on your books. With kind regards and thanking you in anticipation, I am, as ever,

"Your friend,                                    Chas. E. Billingsley."

By letter dated September 5th, the cashier acknowledged receipt of Billingsley's letter, and informed him that his board was unwilling to accommodate him as requested, but inasmuch as his bank paid 2 per cent. on current balances it would have to charge Billingsley 5 per cent., the usual interest on the loan.

On September 8th, Billingsley, as president of his bank, wrote and sent defendant bank the following letter:

"Capitol National Bank, Guthrie, Okla.  Sept. 8, 1903.

"Friend Strean: I am in receipt of yours of the 5th for which accept my thanks. I hand you herewith my note for 30Th at 60 days 5% from date and have given the Capitol Natl. Bank check on you for like amount. and it is agreed that said Capitol Natl. Bank is to keep this 30Th with you until note is retired together with as large a balance as possible. Again thanking you and with kind personal regards, I am,

"Your friend, Chas. E. Billingsley, Prest."

The Guthrie Bank had for some time been keeping a large balance in its current account with the defendant bank. The note for $30,000 referred to in the correspondence was discounted, as requested, and its proceeds were placed to the credit of the Guthrie Bank in a second or special account, as contemplated by the correspondence, not subject to check. At the end of each month, and until the maturity of the note, the Guthrie Bank was credited in the special account with 2 per cent. interest on the special deposit of $30,000, and at the maturity of the note, it, with interest at 5 per cent. per annum, was charged to the Guthrie Bank in this same account. This last charge absorbed the entire credits and somewhat more. Soon thereafter, another note for $25,000 was negotiated by Billingsley with defendant bank on practically the same terms; and subject to the condition as expressed in the letter of Billingsley to the defendant, dated November 23, 1903, wherein, after notifying the defendant of the inclosure of his demand note for that sum, Billingsley said:

"Please place the proceeds of this note as a special deposit to the credit of the Capitol National Bank of Guthrie, Okla. It being expressly understood and agreed that this fund is not subject to check, but is to remain with the City National Bank for the payment of this note. and you are hereby authorized to charge this note to said account at any time you desire."

Accordingly the special account was credited with the proceeds of that note, and with interest monthly thereafter, until April 4th, the date of the failure of the bank, when the note, without interest, was charged against the account, entirely absorbing it. It is for the return to the Guthrie Bank of these two sums of $30,000 and $25,000 that the receiver institutes this suit. The Guthrie Bank kept in its books only one account with defendant bank, aggregating the amount of the general and special accounts kept by the defendant, but the reconcilement statements exchanged between the banks monthly, and sometimes daily, showed the existence of the special account in favor of the Guthrie Bank as forming a part of what its books treated as the general current account. The Guthrie Bank also kept a book called "its reconcilement book." This was one of its permanent records in which the special account was also recognized and treated as forming a part of the general account which its ledgers showed it kept in the defendant bank. Some incorrect entries were first made in the books of the defendant bank arising from the fact that its cashier, with whom the transaction had been negotiated, was temporarily absent, but they were quickly corrected on his return, and the special account was opened according to the agreement of the two banks. The check of Billingsley

for $30,000, referred to in his letter of September 8th, was duly honored, and the amount ultimately charged to the general account of the Guthrie Bank, and its proceeds, when received or made available at Guthrie, were employed in taking up or charging out the three excessive loans complained of by the examiner.

There is much detail of fact consisting of entries in the books of the bank stated in the special finding of the court, but it is not deemed necessary to complicate this opinion with such details. The ultimate facts are clear, showing that pursuant to the correspondence between the two banks the proceeds of Billingsley's two notes for $30,000 and $25,000, respectively, were entered to the credit of the Guthrie Bank in the special account to meet the payments of the notes at maturity, and the fact is clear that at their maturity the proceeds of the notes were appropriated for that purpose, and were never used for any other purpose. By reason of the failure of the Guthrie Bank to recognize in its bookkeeping, the existence of the special account in the defendant bank, as separate from its general account there kept, the books of the Guthrie Bank at all times showed that it had a general credit in the defendant bank aggregating the amount of both the general and special accounts. This method of bookkeeping no doubt served the purpose which inspired it, to deceive the comptroller or the bank examiner. The Guthrie Bank appeared to have, according to its books, at first $30,000 and later $25,000 to its general credit in the defendant bank more than it really had. In this way the Guthrie Bank was able to get rid of its three obnoxious notes amounting to $30,000 apparently without disturbing its cash reserve, and in a manner satisfactory to the bank examiner. It is now well settled that the executive officers of national banks may legitimately, in the usual course of banking business, and without special authority from their boards of directors, rediscount their own discounts or otherwise borrow money for the bank's use. Auten v. United States National Bank, 174 U. S. 125, 141, 19 Sup. Ct. 628, 43 L. Ed. 920; Aldrich v. Chemical National Bank, 176 U. S. 618, 627, 20 Sup. Ct. 498, 44 L. Ed. 611; First National Bank of Huntington v. Arnold, 156 Ind. 494, 60 N. E. 137. These cases distinguish Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470, relied upon by the receiver's counsel, and show its inapplicability to the facts of the present case.

Two questions of fact are presented for our determination: First, did the defendant devote any money in its possession belonging to the Guthrie Bank to the payment of any indebtedness whatsoever? Second, if so, was it used to pay the debt of the Guthrie Bank or for its benefit, or for the individual benefit of its president, Billingsley? The only moneys claimed to have been wrongfully appropriated by the defendant were the two items of $30,000 and $25,000, respectively, credited to the Guthrie Bank in the special account. Did those sums belong to the Guthrie Bank? In answering this question we must consider the substance of things rather than the form in which they are clothed; the actual purpose and agreement of the parties rather that the bookkeeping entries which might have been made by either party for ulterior purposes. In so doing we find that the parties at the outset

agreed that the transactions in question should take the forms of loans but not their reality. The defendant bank never parted with the possession of the money claimed to have been loaned by it. It did not subject it to check or any other use whatsoever by the Guthrie Bank. It held it for cancellation of the notes representing the so-called loans. At best the Guthrie Bank got title to the funds in that account subject to a condition, which, in our opinion, it never intended to perform and which in fact it never did perform, and for the nonpayment of which the defendant bank asserted its former unconditional title to the money. The appropriation by the defendant of the money in question for the purpose of canceling the notes representing the so-called loans was in pursuance of an agreement between the two banks to that effect, and did not amount to conversion. Bell v. Hanover Nat. Bank (C. C.) 57 Fed. 821; Scott v. Armstrong, 146 U. S. 510, 13 Sup. Ct. 148, 36 L. Ed. 1059; Bushnell v. Chautauqua County Nat. Bank, 74 N. Y. 290; Coats v. Donnell, 94 N. Y. 168; Judy v. Farmers' & Traders' Bank, 81 Mo. 404. The fact that the Guthrie Bank entered in its own book the proceeds of the so-called loans as general credits against the defendant bank, ignoring the contract involved in the correspondence resulting in the special accounts, did not operate to give it that general credit or confer upon it the right to draw against it. The whole transaction was a subterfuge. It afforded the Guthrie Bank the specious opportunity of making a partial and misleading entry in its own books to the effect that it had a greater general credit in the defendant bank than it really had; thereby enabling it to take care of the excessive loans without exciting suspicion. The correspondence shows that the defendant bank became subservient to the scheme of the Guthrie Bank, but on terms of absolute security to itself. It accommodated its customer, pretended to make a loan of money, but in reality retained possession and absolute title to the same, and by charging the face of Billingsley's notes to the special account, in the circumstances disclosed, it cannot be said to have made use of any of the money of the Guthrie Bank. The Guthrie Bank, while a going concern, could not have maintained an action against the defendant for conversion of the money, and neither can the receiver, who takes only the rights of the bank, now do so. But if the transaction in question evinced a real loan by defendant bank, instead of the pretended one, as already found, we must reach the same result.

Many cases have arisen in which the discounting bank has sought to recover from another bank on notes signed personally by one of its executive officers, on the ground that, notwithstanding the personal signature, the loan was really made for and in the interest of the bank itself. One of the tests of liability in such cases conceded by counsel in argument to be applicable to this case, is whether the loan was made for the benefit of the bank or of the individual officer; and this has often been determined by ascertaining which party in fact received the benefit of the loan or whether the bank subsequently ratified the loan as its own. Aldrich v. Chemical National Bank (supra) : Hanover National Bank v. First National Bank, 48 C. C. A. 482, 109 Fed. 421; Armstrong v. Chemical Nat. Bank, 27 C. C. A. 601, 83 Fed.

556; American Preserver's Trust v. Taylor Mfg. Co., 46 Fed. 152; Melledge v. Boston Iron Co., 5 Cush. (Mass.) 158, 51 Am. Dec. 59; Carroll v. St. John's, etc., Society, 125 Mass. 565. Applying this test, we find that the notes signed by Billingsley were undoubtedly intended to be made use of by him for the benefit of the bank, and not for himself. This is shown by considering the face of the notes, together with the correspondence between the parties attending their negotiation. All these things taken together constitute the contract as between the original parties. The letters of September 4th and 8th, and November 23d, written by Billingsley to Strean, defendant's cashier, seem to us conclusive. While Billingsley uses the personal pronoun "I" very often, it is evident he uses it in his representative capacity as president of the bank. For instance, in the first-mentioned letter, he says:

"I have the amount [$30,000] of excessive loans that the department is kicking about, and I will be unable to reduce them to limit for 3 or 4 months. But do not want to make a discount and pay interest when it is not necessary."

The fact is, he personally had no excessive loans and there was no personal obligation upon him to reduce them and he personally had no occasion to borrow money for that purpose. The purpose entertained and declared was in some manner to get the use of money for the purposes of the bank only. Again, in the letter of September 8th, he says, over his signature as president and not as an individual:

"I hand you herewith my note for 30Th at 60 days 5% from date and have given the Capitol Natl. Bank [that is, his own bank] check on you for like amount and it is agreed that said Capitol Natl. Bank is to keep this 30Th with you until note is retired together with as large a balance as possible."

In the letter of November 23d, Billingsley, in transmitting his note for $25,000, says: "Please place the proceeds of this note to the credit of the Capitol National Bank of Guthrie, Okl.," to be used only for the purpose of charging off the note. These quotations and other features of the letters very clearly show the purpose to have the money which incidentally became available by means of the loan, the current general account and the misleading bookkeeping of the Guthrie Bank, devoted at once to the uses of the bank, and not to Billingsley's own use. The promise found in the letter of September 8th, to keep as large a general balance on hand as possible and the contemporaneous draft of $30,000 against the general account in favor of the Guthrie Bank show how the scheme was to work. The Guthrie Bank was to get out of the general account $30,000 for its manipulation in disposing of the excessive loans and by reason of the fact that the special account, even though it could not be drawn against, was to appear in the Guthrie Bank books as a part of its general balance in the defendant bank, the apparent general balance would not be lessened thereby and the bank's reserve would apparently remain intact. It is true the $30,000 so drawn in favor of the Guthrie Bank was by it placed to the individual credit of Billingsley, but this was done pursuant to a general custom which had for sometime prevailed there, of keeping and paying out all borrowed money in his individual name. In the light of that custom the last-mentioned fact becomes insignificant. But counsel for plaintiff earnestly contend that Billingsley got the notes representing

the three excessive loans and thereby appears to have been the only party benefitted by the deal with the defendant bank.

The special finding of facts discloses that contemporaneously with the honoring of the check for $30,000 drawn against the general account in defendant bank, the excessive loans were "taken up or charged out of the assets of the bank"; that those notes are not now among the assets of the Guthrie Bank; that "it does not appear what has become of them"; that the bills receivable account of that bank was on September 9th credited with $30,000; and that the discount register indicated that the three notes were paid on that day. These facts, and others in connection with them, fail to convince us that Billingsley took title to or possession of these notes, or that the learned trial judge was incorrect in finding that it does not appear what became of the notes, physically speaking. The facts as found, however, determine that the legal title to the notes still rests in the Guthrie Bank. The money drawn against its general account in defendant's bank was made use of by bookkeeping entries to make it appear that the notes had been paid, when in fact they had not been paid. They should properly have been charged to profit and loss, but the Guthrie Bank probably did not have available cash sufficient to do so. Accordingly, the subterfuge was resorted to to secure an apparent general balance with defendant bank larger by $30,000 than it really was. It is too clear for further argument that the notes in question were, with the full understanding of both parties, employed by them as instrumentalities of the Guthrie Bank to do its business, and not that of Billingsley personally.

Counsel for defendant contend that subsequent events, notably the mutual and regular exchange of reconcilement statements, and the treatment of the special account by the defendant without any dissent by the Guthrie Bank, amount to an adoption or ratification by the latter of Billingsley's acts. See Armstrong v. Chemical Nat. Bank. But we think the facts so clearly show that the original transaction was intended by both banks and subsequently worked out by them for the benefit of the Guthrie Bank, and not of Billingsley, we deem it unnecessary to resort to the doctrine of ratification or estoppel to fortify our conclusion.

In the view we have taken of the foregoing controlling questions, it is unnecessary to answer categorically the several assignments of error. On the finding of facts made by the learned trial judge the judgment as rendered was undoubtedly for the right party, and is accordingly affirmed.