RANKIN, RECEIVER OF THE CAPITOL NATIONAL BANK OF GUTHRIE, OKLAHOMA, *v.* CITY NATIONAL BANK OF KANSAS CITY, MISSOURI.[1]

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 51. Argued November 12, 13, 1907.—Decided February 24, 1908.

In a transaction between two banks the president of one gave his personal note to the other, accompanied by an agreement of his bank, signed by himself as president, that the proceeds of the note should be placed to the credit of his bank by, and remain with, the discounting bank until the note was paid; while there were certain transfers of checks between him and his own bank the record did not show that the maker of the note personally received the proceeds thereof, and no contention was made that the agreement was illegal. *Held.* that:

Under the circumstances of this case; the discounting bank was entitled to hold the proceeds of the note, as represented by the credit given on its books therefor, as collateral security for the payment of the note and to charge the note against such credit, and relieve itself from further responsibility therefor.

The receiver of a bank stands in no better position than the bank stood as a going concern.

144 Fed. Rep. 587, affirmed.

THE facts are stated in the opinion.

*Mr. C. B. Ames,* with whom *Mr. D. T. Flynn* and *Mr. W. C. Scarritt* were on the brief, for plaintiff in error.

*Mr. John A. Eaton* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This suit was brought by the receiver of the Capitol National Bank of Guthrie, Oklahoma Territory, which we shall call the Guthrie Bank, to recover the amount of an alleged deposit in the City National Bank of Kansas City, Missouri,

---

[1] Originally docketed as *Cherry, Receiver,* v. *City National Bank;* by order of the court *George C. Rankin,* successor of the former receiver, was substituted as plaintiff in error.

which we shall call the City Bank. At a trial without a jury in the Circuit Court the facts were found and judgment was given for the defendant, which judgment was affirmed by the Circuit Court of Appeals. *Cherry, Receiver,* v. *City National Bank,* 144 Fed. Rep. 587; *S. C.,* 75 C. C. A. 343. We give an abridgment of the findings of the Circuit Court.

The bank examiner had complained of excessive loans by the Guthrie Bank and especially of three notes for ten thousand dollars each, made, respectively, by the Missouri, Kansas and Oklahoma Company, the Wild West Show Company, and the Western Horse Show Company, and had directed them to be reduced. Thereupon one Billingsley, its president, who managed its business with the defendant, wrote to the defendant's cashier, saying "I want you to take my note of 30,000.00 and Cr. my Bank with like amount in a special account with the understanding that said account is not to be checked against. My reason for wanting this is that I have that amount of excessive loans that the Department is kicking about. . . . You will not be out any money and loan and deposit will offset each other on your books." The Guthrie Bank had a general deposit with the City Bank, but this on its face was a scheme for a separate paper transaction. The proposal was accepted, Billingsley sent his note, and wrote saying that he had given the Guthrie Bank his check on the City Bank for the amount, adding: "and it is agreed that said [Guthrie Bank] is to keep this 30 Th with you until note is retired together with as large a balance as possible. . . . Chas. E. Billingsley, Pres't."

Billingsley gave the above-mentioned check to the Guthrie Bank, which credited it to his personal account, in which the bank's money was kept, as will be stated later. The same day he gave to the bank a check against his personal account for the same sum, which was charged to that account and credited to bills receivable, and thereupon the three notes objected to by the bank examiner were taken out of the bank's assets and possession. What became of them does not appear. It was argued from several circumstances not necessary to mention

that they were paid by Billingsley, but that fact is not found. Billingsley does not seem to have been personally liable upon them, and all that can be said is that the scheme to get them off the books was carried out. The cashier of the City Bank was away when the letter with Billingsley's note arrived, and there were telegrams; after which the City Bank on September 10 or 11, 1903, charged the note to bills receivable, the check to Billingsley, and credited the Guthrie Bank with $30,000 on general account. On September 14, the cashier, having returned, transferred $30,000 to a special account according to the plan. Billingsley was notified and all transactions in this matter thereafter were entered by the City Bank on this special account.

On November 9, 1903, Billingsley's note falling due, the account was charged with the amount and interest. The same day a letter from Billingsley was received asking an extension. The cashier replied that they had charged his account with the note, but would renew it on satisfactory collateral, and returned the note. Billingsley answered, enclosing a note for $30,000, and requesting that the former arrangement be continued. In answer to this the president of the City Bank wrote that they preferred a demand note, and that to satisfy the comptroller they would rather that it should be for $25,000 instead of $30,000. On November 30, 1903, Billingsley enclosed his note for $25,000 in a letter to the president, requesting that the proceeds be placed as a special deposit to the credit of the bank, and repeating the old agreement: "It being expressly understood and agreed that this fund is not subject to check but is to remain with the City National Bank for the payment of the note, and you are hereby authorized to charge this note to said account at any time you desire." Originally the note was signed "Chas. E. Billingsley Pt." and the letter with his name without addition. On December 12, the president of the City Bank wrote that the note should be signed individually and the letter as president, and enclosed the letter for the change. Billingsley admitted the mistake, added "Prest." to

his signature and returned the letter, at the same time authorizing the City Bank to strike off the "Pt." from the signature on the note, which was done.

On November 30, 1903, in order to make the balance of the City Bank account on the books of the Guthrie Bank correspond with the books of the City Bank, Billingsley gave the teller of the Guthrie Bank his check upon it in favor of the City Bank for $5,000, which was stamped paid, and the amount credited to the City Bank on the books of the Guthrie Bank. On December 7, the City Bank credited the Guthrie Bank with $25,000 on the special account. It credited two per cent interest at the end of each month while the account was open, and there was a small deduction as the result of the first stage for interest on the $30,000 note, so that on April 4, 1904, the special credit to the Guthrie Bank was $24,994.54. On that day the City Bank, having no knowledge that the Guthrie Bank was in a failing condition, charged the note to the account, returned the same duly cancelled, and closed the account. Later on the same day the Guthrie Bank failed and went into the hands of a receiver. The receiver notified the City Bank that the note was not a liability of the Guthrie Bank and that the City Bank would be held.

There are few other facts needing mention. Statements of account were made monthly by the banks to each other up to February 1, 1904, and after that daily reconcilements were made. The statements of the City Bank showed the special or No. 2 account as well as the general one, and these were entered in the Guthrie Bank reconcilement book as No. 1 and No. 2. The Guthrie Bank also recognized the existence of the special account in corrections sent to the City Bank. But the whole amount appeared in its general account. It should be added that the Guthrie Bank was in the habit of borrowing money by issuing notes and crediting the proceeds to Billingsley's personal account, the notes being paid by Billingsley's checks. Billingsley also entered his personal deposits and drew his personal checks upon the same account. It should be added

further that in the Circuit Court both counsel agreed that it was not contended that the contract was illegal because it enabled a false showing to be made of the condition of the Guthrie Bank.

The plaintiff, the receiver of the Guthrie Bank, argues that the foregoing transaction was really a loan to Billingsley with an attempted pledge of a deposit of the Guthrie Bank in the City Bank, and is shown to have been so by the facts that he gave his personal note, that he gave his check on the City Bank for the amount to the Guthrie Bank, and that by means of another corresponding check the three notes objected to by the bank examiner were taken out of its assets and possession. It is added that Billingsley was interested in two at least of these notes, as he was vice president of the companies that made them, and that the entries on the books and other facts show that they were paid. But, as we have said, neither legal interest on Billingley's part nor payment is found, and we cannot find those facts here. *Generes* v. *Campbell*, 11 Wall. 193. Leaving them on one side, the argument for the plaintiff stands mainly on the technicality that Billingsley, instead of merely writing the letter in which the agreement was embodied, and having the credit on special account issued without more to the Guthrie Bank, gave his check on the City Bank as the means of getting the credit on to the Guthrie Bank's books. We will deal with these arguments in our own order and way.

This suit it will be remembered is to recover an alleged deposit, and the first thing to notice is that the whole business, from beginning to end, was and was intended to be a mere juggle with books and paper to deceive the bank examiner. The City Bank never received anything from the Guthrie Bank, the Guthrie Bank never parted with anything to the City Bank, or with anything for the loss of which the City Bank is responsible, if it parted with anything at all. It would stretch the findings to say that the Guthrie Bank does not still own the three notes. But if it does not the City Bank had nothing to do with its giving them up. The supposed surrender was not a consideration to the City Bank, and so far as appears

never was known by it to have taken place. It was a transaction wholly between Billingsley and his own bank. So far as the surrender of the notes goes, the parties stand exactly as if that had taken place without a check, in consideration of Billingsley making the note on which the credit was given to the Guthrie Bank. It is said that the Guthrie Bank got the money, but did not get the benefit of the loan. As between the banks no one got any money, and the only benefit of the loan in fact or contemplation was a swindle upon the bank examiner. If the City Bank should be held it would be held without ever having received a *quid pro quo* except in the most narrowly technical sense. The consideration would be the delivery of Billingsley's note by the Guthrie Bank.

Again, the alleged deposit was a parol contract made by the letters of which we have given extracts. There is no other contract but the one so made. But by those letters the City Bank did not promise to hold $30,000, or at the later stage $25,000, to the credit of the Guthrie Bank out and out. On the contrary, it merely agreed to credit these sums against the notes which it held, on the express condition that no checks should be drawn against them, and that when the first note matured, or, after the second, whenever the bank pleased, the notes should be charged against the account and extinguish it. We perceive no sufficient ground for substituting a fiction for the only promise the City Bank ever really made. If the Guthrie Bank had sued while it was a going concern it could not have recovered, and the receiver stands no better than the bank.

This promise, however, the City Bank made to the Guthrie Bank at the first step of the transaction, and not to Billingsley. The plan was proposed as a plan for the help of the Guthrie Bank. It provided from the start for a credit to the Guthrie Bank. At the moment when the agreement was reached and Billingsley sent his note he signed a promise as president, embodying the terms. He corrected the letter with his second note to an official promise in like form. This meant a promise

by the Guthrie Bank, and shows that the Guthrie Bank, not Billingsley, was the other partly to the bargain. It is true that Billingsley's personal obligation was given to the City Bank, but the only reasonable interpretation is that he lent his credit to the bank of which he was the leading spirit, to help it to perpetrate its fraud. It seems to us too plain for further argument that the contract concerning the credit was made between the banks at the beginning and governs all that happened later.

The only material thing that happened was Billingsley's drawing his check on the City Bank for the amount of the loan and depositing it to his credit in his own Guthrie Bank. Even if this, as in other cases, was regarded as a deposit of the bank's money, still it was not quite logically consistent with his contract that Billingsley should make his check upon the City Bank for money which it had agreed with the Guthrie Bank to credit to it. But the check was only a documentary form to justify the entry of a deposit. To the City Bank it was immaterial, as the result no less was the credit to the Guthrie Bank upon the special account and subject to the terms to which both parties had agreed. The subsequent check on the Guthrie Bank to the Guthrie Bank was another documentary form to give a plausible justification for getting the three notes out of the assets. But with that, as we have said, the City Bank had nothing to do.

In view of the statement of counsel, at the argument, to the circuit judge, that they did not contend that the contract was illegal, a disclaimer repeated to us, and in view of the possibility that the facts were found as they were with that agreement in view, we shall not consider that aspect of the case. It would not help the plaintiff. *McMullen* v. *Hoffman,* 174 U. S. 639. We are of opinion upon the facts that we have set forth that the courts below were right.

*Judgment affirmed.*

Mr. Justice White and Mr. Justice McKenna dissent.