[No. 16572.   Department Two.   September 26, 1921.]

FIRST NATIONAL BANK OF BREMERTON, *Appellant*, v.
GUARDIAN TRUST & SAVINGS BANK, *Respondent*.[1]

BANKS AND BANKING (14)—VALIDITY OF LOAN—AUTHORITY OF
OFFICER—NOTICE OF FRAUD. Where the president and executive offi-
cer of one bank pursued a policy of discounting commercial paper
and opening a credit account thereon with another bank, on the
representation that they were bona fide loans to solvent borrowers
which his bank could not handle, the transaction was not on its
face so out of the ordinary course of business as to put the dis-
counting bank on inquiry as to any fraudulent intent of such of-
ficer to appropriate the money to his personal use; and hence the
discounting bank cannot be held liable to the other bank for the
defalcation of the money by the latter's president.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered March 22, 1920, upon
granting a nonsuit, dismissing an action to recover
funds alleged to belong to a bank through the fraud
of an officer.  Affirmed.

*Poe & Falknor* and *Piles & Halverstadt,* for appel-
lant.

*Roberts & Skeel* and *J. J. Geary,* for respondent.

TOLMAN, J.—For some years prior to September 25,
1917, one C. E. Thomas was the majority stockholder,
a director, and president and chief executive officer of
the appellant bank.  In the year 1916, Thomas made
an arrangement with the respondent bank by which
he, Thomas, might discount with the respondent com-
mercial paper guaranteed by him personally, the pro-
ceeds to be placed to the credit of the appellant and
retained by respondent until the discounted paper was
paid.  In March, 1917, Thomas so discounted a note
made by one G. B. Colvin for $2,000, payable to him-

[1]Reported in 200 Pac. 1095.

self and indorsed by him. In April, 1917, he drew his own note for $1,000 to the order of respondent, and deposited it with the respondent to the credit of appellant; and in September, 1917, he discounted with respondent under the same arrangement a note for $1,250, made by the Bremerton Lumber Company to his order and indorsed by him. The appellant bank never had any interest in any of these notes and knew nothing of either transaction until the later discovery hereinafter referred to. As each of these notes was discounted its proceeds were placed to the credit of appellant, and Thomas made an entry upon appellant's books showing that it had such credit with the respondent, and immediately, to balance such credit, withdrew an amount of money equal thereto and applied it to his own use. The discounted notes were renewed from time to time, and finally, being unpaid, they were charged back against appellant's credit account created by their discount in the respondent bank, thus extinguishing that credit.

Other notes were discounted in the same way which were paid, and hence are immaterial here except as they involved another officer of the appellant bank.

These transactions were discovered on or about September 25, 1917, and thereupon the directors of the appellant bank, acting in conjunction with the national bank examiner, forced Thomas to resign his official positions and turn over his stock in the bank, and other property, as security for his indebtedness to the appellant.

After the discovery and the resignation of Thomas, the appellant notified the respondent that Thomas was no longer authorized to sign drafts for it, and supplied respondent with new authorized signatures, and thereafter the appellant drew its draft on the respond-

ent against this account for $3,500, which draft was dishonored and returned unpaid, whereupon this action was brought to recover from respondent the Thomas shortage up to the full amount of the credit created in appellant's favor by the discount of the notes referred to.

The case was tried to a jury, and at the close of plaintiff's evidence, respondent challenged the sufficiency of the evidence and moved for judgment, which motion was granted and a judgment entered accordingly, from which this appeal is prosecuted.

The vital point to be here decided, as we see it, is, were the transactions between Thomas and the respondent bank of such a nature as to put the respondent on notice that Thomas intended thereby to defraud the appellant.

Mr. Harrison, who was vice-president of the appellant during the operations referred to, and who succeeded Thomas as president, caused his own note to be discounted in the same way and through the same channels, and upon the witness stand he confidently asserted that his was an entirely legitimate transaction because his note was paid. Assuming that to be true, does it not follow that respondent bank, having no reason for a contrary belief, was justified in believing that Thomas was also acting in a legitimate manner, with no intention to do otherwise than to assist the bank of which he was president, and its customers? Thomas represented to respondent that these were *bona fide* loans to solvent borrowers, which his bank could not handle, and since his bank was not in any way bound on the paper discounted, and did receive to its credit the proceeds of the discount, why should respondent question the transaction?

Such transactions present on their face nothing so out of the ordinary course of business as to put the

discounting bank on inquiry as to a possible fraudulent intent, and have often been upheld by the Federal courts. *Chemical Nat. Bank v. Armstrong*, 76 Fed. 339; *Rankin v. City Nat. Bank*, 208 U. S. 541; *Cherry v. City Nat. Bank*, 144 Fed. 587. See, also, *Chemical Nat. Bank v. Armstrong*, 50 Fed. 798, and *Aldrich v. Chemical Nat. Bank*, 176 U. S. 618.

We conclude that the evidence offered by appellant was insufficient to support a verdict in its favor, and therefore the judgment of the trial court was right.

Judgment affirmed.

PARKER, C. J., BRIDGES, MAIN, and MITCHELL, JJ., concur.