## HOOKWAY v. FIRST NAT. BANK.

Circuit Court of Appeals, Eighth Circuit.
November 11, 1929.

No. 8415.

Dewey, District Judge, dissenting.

W. F. Bruell and Bruell & Henderson, all of Redfield, S. D., and Price & Burnquist, of Ft. Dodge, Iowa (R. M. Henderson, of Redfield, S. D., and B. J. Price and B. B. Burnquist, both of Ft. Dodge, Iowa, on the brief), for appellant.

A. J. Burt, of Emmetsburg, Iowa, and Seth Thomas, of Ft. Dodge, Iowa, for appellee.

Before BOOTH, · Circuit Judge, and SANBORN and DEWEY, District Judges.

BOOTH, Circuit Judge. This is an appeal from a judgment entered in favor of appellee, defendant below, hereafter called the Emmetsburg Bank, in an action at law brought by the receiver of the First National Bank of Frankfort, S. D., hereafter called the Frankfort Bank. Plaintiff in the action sought to recover the balance of deposits alleged to have been made by the Frankfort Bank in the Emmetsburg Bank, amounting to $9,887.75.

The defendant in its answer, in addition to a general denial, set up an affirmative defense, in substance, that the deposit account upon which plaintiff's suit was based was for the accommodation only of the Frankfort Bank, and was carried pursuant to a certain agreement and contract, partly in writing and partly oral, entered into between said banks by their respective officers; that said contract provided that the defendant bank should carry notes of the customers of the Frankfort Bank, and that at the same time said Frankfort Bank should carry a deposit with the defendant bank equal to or greater than the amount of the notes so carried by the defendant bank for the Frankfort Bank; that said deposit account should be inactive, that is, not subject to check or draft while said notes were so carried, so as to reduce said deposit below the amount of said notes; and that said deposit should be held by the defendant bank against said notes, all for the accommodation of the Frankfort Bank; that the banks thereafter acted upon the arrangement so made.

The answer further alleged that on the 8th day of April, 1926, there were in the possession of the defendant bank three renewal notes received from the Frankfort Bank which were unpaid and which were carried as accommodation for said bank against said inactive account; and that in accordance with the provisions of the contract aforesaid, the deposit account was applied to the payment of those three notes, and that no deposit balance was left in said accommodation account.

The reply denied that the deposit carried was an accommodation deposit; denied that

it was to be or was inactive; denied any oral agreement between the banks; denied that the course of dealing between the banks was in conformity with the alleged oral agreement. The reply admitted the application of the balance to payment of said notes, but alleged that the application was without right or authority on the part of the Emmetsburg Bank. The reply further alleged that the transactions between the two banks were conducted by E. B. Soper, as representative of the Emmetsburg Bank, and that he was also a stockholder in the Frankfort Bank; that the transactions on the part of the Frankfort Bank were conducted by C. A. Kleppin, and that said action was the individual action of Mr. Kleppin without the knowledge, right, or authority to represent the Frankfort Bank in said transaction; and that Soper knew that Kleppin was acting in his individual capacity in said transactions without the right, knowledge, or authority so to do as a representative of said bank.

The cause came on for hearing on June 13, 1926, before the court and a jury. At the close of all the evidence both parties moved for a directed verdict. The court then said: "Gentlemen of the Jury, the evidence having been closed, and both parties having moved the Court to direct the Jury to return a verdict in their favor, that in law amounts to a request upon the part of each party that the Court find the facts in this case, and to withdraw the case from the consideration of the jury. Therefore, gentlemen, you will have no further duties in this case, the case is withdrawn from your consideration and the Court will find the facts."

In addition to the findings by the court there are admissions of certain facts in the pleadings; and still other facts were stipulated by the parties. Gathering all of these facts together, and separating the court's findings into paragraphs, we have the following facts upon which the judgment was based.

1. In December, 1917, the First National Bank of Frankfort, S. D., was a national bank. A. B. Robinson was its president; C. A. Kleppin its cashier.

2. The First National Bank of Emmetsburg was a national bank at the time stated.

3. At that time the officers mentioned of the Frankfort Bank desired to borrow money and desired that certain customers of that bank should have opportunity to borrow money.

4. The borrowing capacity of the proposed borrowers was exhausted at the Frankfort Bank under the law.

5. These officers devised a scheme for the purpose of deviously procuring loans from the Frankfort Bank as follows: (a) One of these officers would communicate with the officials of the Emmetsburg Bank, and propose that they had certain customers entitled to further credit, but whose ability to borrow from the Frankfort Bank had been exhausted; (b) these officers of the Frankfort Bank would request of the president of the Emmetsburg Bank that it (Emmetsburg Bank) in form carry the proposed loans by consenting to the execution of promissory notes payable to that bank (Emmetsburg Bank), the same to be forwarded to the Emmetsburg Bank by these officers of the Frankfort Bank; (c) upon receipt of the notes the Emmetsburg Bank would credit the account of the Frankfort Bank an amount equal to the supposed proceeds of the notes, but the credit should remain inactive and not be checked against; (d) simultaneously a charge would be made upon the books of the Frankfort Bank against the Emmetsburg Bank; and (e) credits would be entered upon the books of the Frankfort Bank to the individual accounts of the proposed borrowers in their proportionate shares of the aggregate sum of the notes forwarded; (f) thereupon the proposed borrowers would be permitted to check their money out of the Frankfort Bank.

6. About December 17, 1917, three promissory notes were made—one by C. A. Kleppin for $5,500; one by A. B. Robinson; one by an elevator company, a customer of the Frankfort Bank.

7. On the making of those three notes, aggregating $13,250, a false entry was made on the books of the Frankfort Bank indicating that a deposit of money had been made in that bank that day, amounting to $13,250.

8. These notes were forwarded to the Emmetsburg Bank under the proposed scheme, with the intention that no proceeds should be remitted, but that a credit should be entered for an amount equal to the supposed proceeds on the books of the Emmetsburg Bank in favor of the Frankfort Bank, and that the credit should be inactive and in form only.

9. A charge was made against the Emmetsburg Bank on the books of the Frankfort Bank for a like amount of $13,250, which was also intended to be inactive and not used by the Frankfort Bank.

10. Either directly or by colorable transfer through another corporation, credits

were entered to the accounts of the makers of the notes.

11. The proposed scheme was consummated by permitting the borrowers to check those accounts out of the Frankfort Bank, thereby misapplying the money of the Frankfort Bank.

12. These funds so credited were misapplied by the officers of the Frankfort Bank at the time of the original transaction more than 10 years ago (i. e. prior to the trial).

13. These transactions were intended to be a mere juggle with books and papers to deceive the bank examiner, and to enable the officers of the Frankfort Bank and others favored by them to illegally borrow money from the Frankfort Bank and cover the same up by this juggle of books and papers through the Emmetsburg Bank.

14. The present action is one brought to recover upon a deposit upon implied contract alleged. It is not an action sounding in tort.

15. No deposit was ever made in the Emmetsburg Bank by the Frankfort Bank so far as this matter is concerned.

16. The agreement under which the various notes were sent from time to time to the Emmetsburg Bank is contained in part in the following letters:

"A. B. Robinson,      C. A. Kleppin,
"President           Cashier
"J. W. Yager,        U. H. Cooke,
"Vice-Prest.         Vice-Prest.
"A. A. Nahnsen,
"Asst. Cashier.
"No. 10683
"F. N. B.
First National Bank
"Frankfort, S. D.
"February 24, 1917.

"Mr. E. B. Soper, Jr., Emmetsburg, Iowa., Dear Friend: We have three or four customers who are entitled to a greater line of credit than we can extend them under the law, and I am wondering if we could arrange with your bank to have the excess of the amount made out on your paper, and you carry it for us. Kindly advise me what you can do for us in the matter.

"Our business is holding up in good shape. Our footings are now $244,000. With kindest personal regards, I am,

"Very truly yours,
"C. A. Kleppin, Cashier.

(Heading omitted.)
"December 17th, 1917.

"Mr. E. B. Soper, Jr., President, First National Bank, Emmetsburg, Iowa. My dear E. B.: Herewith we hand you notes aggre-

gating $13,250.00 which kindly credit to the account of the Security Investment Co.

| | |
|---|---|
| A. B. Robinson | $ 2,750 00 |
| C. A. Kleppin | 5,500 00 |
| Frankfort Farmers Elevator Co | 2,500 00 |
| "    "    "    " | 2,500 00 |
| | $13,250 00 |

"The Security Investment Company is making a draft on you for $13,250.00 which we are sending to you as a Remittance and kindly ask that you credit the account of the First National Bank of Frankfort, S. D. for the amount.

"Very truly yours,
"Dict. CAK:T.     P. D. Esau, Asst. Cashier.

(Heading omitted.)
"January 15th, 1918.

"Mr. E. B. Soper, Jr., Emmetsburg, Ia., My Dear E. B.: Relative to the notes we sent you some time ago we kindly ask that you credit our account for same as we have already charged them to your account. The balance we are carrying with you will be inactive as long as you carry these notes for us.
"CAK:T.     Very cordially yours.
"Enc.–1.       C. A. Kleppin, Cashier.

"Jan. 17, 1918.

"Mr. C. A. Kleppin, Cashier, First National Bank, Frankfort, S. D. Dear Carl: Herewith I enclose you Duplicate Deposit Slip Security Investment Company $13,250.-00 per paper sent me in December. I note that the account will remain inactive while we carry the paper. The requested transfer has been made to the credit of the First National Bank of Frankfort.
"EBS/VT     Respectfully,
"Encl.        E. B. Soper, President.

(Heading omitted.)
"May 29, 1920.

"Mr. E. B. Soper, Emmetsburg, Iowa. My Dear E. B.: Herewith we hand you the $3500 note of the Security Investment Co., and kindly ask that you carry same for us.

We are charging your bank for the amount. Kindly return the $2500 note which your bank is carrying for us, charging same together with interest to our account. You will notice that we have increased the note $1000, and hope that this may be satisfactory.

"With kindest personal regards, I am
"Very truly yours,
"C. A. Kleppin, Cashier.
"CAK:OHM
"Enc. 1.

"Feb. 25, 1926.

"Mr. C. A. Kleppin, President, First National Bank, Frankfort, South Dakota. Dear

Carl: I have just wired you; 'Cannot honor draft and must charge in paper unless it is recalled.' which message I hereby confirm.

"You recall that for the past several years, as you have been advised, this balance of the First National Bank of Frankfort has been held as against the paper which was sent down here to obtain credit and you have been advised that the Department was insistent on its elimination and I advised you that as long as they would permit it, we would let the matter stand, the balance remaining intact.

"The situation is such that it is useless to do anything rather than face the situation squarely, and as this paper given by yourself and the Security Investment Company more than constitutes the balance which we hold to the credit of the First National Bank of Frankfort, there is no alternative for us but to apply the balance so far as it will go in liquidation of this paper.

"I trust that we may have telegraphic advice recalling the draft of $2,000.00 as otherwise we have no alternative but to proceed as above outlined.

"Yours very truly,      E. B. Soper."

17. The notes sent to the Emmetsburg Bank from time to time were made payable to it.

18. The notes held by the Emmetsburg Bank on April 8th were renewal notes.

19. On April 8, 1926, a balance appeared on the books of the Emmetsburg Bank in favor of the Frankfort Bank in the sum of $9,-887.75.

20. Thereafter the receiver of the Frankfort Bank drew a draft on the Emmetsburg Bank for said amount, but said draft has not been paid. The reason given for nonpayment was that on April 8, 1926, the Emmetsburg Bank had applied said balance as follows: "$3500.00 on the note for $3500.00 made by the Security Investment Company of Frankfort, South Dakota, which note was then in the bank of the First National Bank of Emmetsburg; $1500.00 upon the note of $1500.-00 made by C. A. Kleppin, which note was then in the First National Bank of Emmetsburg; and the balance on the note for $5500.-00 executed by C. A. Kleppin, which said note was then in the First National Bank of Emmetsburg; that the said application of the said funds so made by the First National Bank of Emmetsburg was made without the knowledge, authority or consent of the Receiver of the said First National Bank at Frankfort."

21. The said balance has never been received by the said First National Bank of Frankfort, S. D., or its receiver, and the said First National Bank of Frankfort, S. D., was closed by the Comptroller of the Treasury on the 7th day of April, 1926, and its affairs were placed in the hands of a receiver for administration and liquidation.

As a conclusion the court found that there was no liability on the part of the Emmetsburg Bank sounding in contract or implied contract for the payment of a deposit actually made. An order was accordingly entered dismissing the petition of plaintiff, with costs against the plaintiff. The present appeal followed.

Upon this state of the record the only questions open for review are: (1) Whether the findings made by the court are supported by any substantial evidence; (2) whether upon all the facts, either found by the court or stipulated, the judgment of dismissal was correct. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Keyes v. Security State Bank, 300 F. 897 (C. C. A. 8).

Questions as to the admission or rejection of evidence are not reviewable on this record, there being no assignments of error relating thereto.

On the question whether the findings are supported by substantial evidence appellant has specified several findings which he claims are without support in the evidence. We have examined them, together with the evidence relating thereto, and, while we deem it unnecessary to discuss them in detail, we hold that they are not without substantial support in the evidence.

The main contention of appellant is that the facts found or stipulated do not support the judgment. The first proposition advanced by appellant is that since the Frankfort Bank became insolvent and closed its doors and the Comptroller of the Currency took charge and appointed a receiver on April 6, 1920, the Emmetsburg Bank could not thereafter legally make the set-off which it attempted to make. Assuming for the present that there was a real deposit standing to the credit of the Frankfort Bank on the books of the Emmetsburg Bank on April 8, 1926, yet, the Emmetsburg Bank, if it held obligations of the Frankfort Bank, could set them off against the deposit, notwithstanding the insolvency and the receivership. Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Storing v. First National Bank, 28 F.(2d) 587 (C. C. A. 8), and cases cited on page 589; Yardley v. Clothier (C. C. A.) 51 F. 506, 17 L. R. A. 462.

The next proposition is that Kleppin, the officer of the Frankfort Bank, with whom the transactions were made, had no authority from the Frankfort Bank to agree (a) either that the deposit in the Emmetsburg Bank should be inactive while the notes were being carried by the Emmetsburg Bank, or (b) that it should stand as a guaranty to the notes sent from time to time to the Emmetsburg Bank by the Frankfort Bank. In advancing this proposition plaintiff doubtless assumes that the making of an agreement that the deposit should be inactive was outside the regular, ordinary business of the Frankfort Bank; and further assumes that the Frankfort Bank had no interest in the notes sent to the Emmetsburg Bank. There are no findings of fact which would serve as a sufficient basis for either of these assumptions. Further, it should be here noted that neither plaintiff nor defendant, in their pleadings, or on the trial, or in this court, contends that the agreement, whatever its terms, was invalid; nor did the trial court so find. Under these circumstances we do not determine whether the agreement was valid or invalid; but we shall consider the situation from each standpoint in turn.

■ It must be borne in mind that the suit is at law upon an alleged contract. The contract arose in connection with the alleged deposit. Such a contract would ordinarily be in substance that the Emmetsburg Bank would pay the deposit to the Frankfort Bank on demand. But the trial court has found that there was no real deposit made by the Frankfort Bank. There was, however, a credit entry on the books of the Emmetsburg Bank. This credit entry arose in connection with the sending of the notes to the Emmetsburg Bank. It had no other foundation But if the Frankfort Bank or its receiver adopts the credit entry as the basis of the present suit, it must also adopt the conditions which attached to the credit entry, viz., that the deposit should not be subject to check until the notes carried by the Emmetsburg Bank were paid. The case of Rankin v. Bank, 208 U. S. 541, 28 S. Ct. 346, 52 L. Ed. 610, is conclusive that in such a situation plaintiff could not recover. See also same case below, Cherry v. Bank, 144 F. 587 (C. C. A. 8).

■ The taking of the notes in the name of the Emmetsburg Bank and the carrying of the notes by the Emmetsburg Bank were a mere fiction; the entry of the credit in favor of the Frankfort Bank on the books of the Emmetsburg Bank was a mere fiction. The agreement as found by the trial court recognizes these fictions. It is true the trial court does not find that the Frankfort Bank was a party to the agreement; but neither does it find that the transactions were not known by the Frankfort Bank and not authorized by it; nor does it find that the Emmetsburg Bank knew that the transactions were without the knowledge or authority of the Frankfort Bank, if such were the case. The elements of an estoppel as against the Emmetsburg Bank were therefore wanting. Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927. Furthermore, no such estoppel was pleaded.

Mere book entries are not conclusive, but are subject to explanation. Harriman Natl. Bank v. Seldomridge, 249 U. S. 1, 39 S. Ct. 244, 63 L. Ed. 443; Modern Woodmen of Am. v. Union Nat. Bank, 108 F. 753 (C. C. A. 8); Kendrick State Bank v. First Natl. Bank (C. C. A.) 213 F. 610.

■ If, on the other hand, the contract was illegal, whether it was made by the Frankfort Bank or by Kleppin with the Emmetsburg Bank, there can be no recovery by the Frankfort Bank or its receiver in the instant case, because such recovery must under the pleadings be based upon the contract arising out of the alleged deposit, and the courts will not aid one to recover upon an illegal contract. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117. In that case, as in this, the contract relied upon was partly in writing and partly in parol. The court said (pages 653–4, 670 of 174 U. S., 19 S. Ct. 845, 43 L. Ed. 1117):

"The complainant cannot count only upon the contract of partnership as evidenced by the writing of March, 1893. That writing evidenced only a portion of the agreement that had been made between these parties, the result being that, although their agreement was in the first instance by parol, a portion of it was subsequently reduced to writing. The whole contract is none the less one and indivisible, just as much as if it had all been put in writing. If it had been, it would scarcely be argued that complainant might maintain an action by relying on that part of it which was valid and relating to the partnership between them, and that he might discard or omit to prove that portion which was illegal. If the complainant did not, the defendant could, prove the whole contract—as well the part lying in parol as that which was reduced to writing—so that the court might, upon an inspection of the whole contract, determine therefrom its character. The unity of the contract is not severed, or its meaning or effect in any degree altered, by putting part of it in writing and leaving the rest in parol. * * *

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is, 'Potior est conditio defendentis.' * * *

"Being of the opinion that the contract proved in this case was illegal, in the sense that it was fraudulent, and entered into for improper purposes, the law will leave the parties as it finds them."

We need not speculate whether plaintiff might have a cause of action in tort against the Emmetsburg Bank and the former officers of the Frankfort Bank. We simply hold that in the present action upon contract the plaintiff has failed to make out a case.

Judgment affirmed.

DEWEY, District Judge (dissenting). The facts found by the trial court are supported by the evidence, but I am unable to agree with my associates that such facts, under the pleadings, support the judgment of the trial court.

The officers of the Frankfort bank, but not the bank, entered into an agreement with the Emmetsburg bank whereby the latter was to carry a false credit in favor of the Frankfort bank which would, and did, enable the officers of that bank to credit their individual accounts in an amount equal to such false credit.

Under this agreement the Frankfort bank, without its knowledge or consent, paid out to its officers the face value of the notes they had deposited in the Emmetsburg bank.

The Frankfort bank received no benefit, but on the other hand, by reason of the fraud, paid out a sum equal to the face of the notes for the benefit of the Emmetsburg bank. There arose therefrom an implied agreement on the part of the Emmetsburg bank to repay that which had been paid out by the Frankfort bank for and on behalf of the Emmetsburg bank.

The underlying promise is implied, and imposed by the law from the facts, to repay the Frankfort bank. Nat'l. Bank of Commerce v. Equitable Trust Co. (C. C. A.) 227 F. 526; Keyes v. First Nat'l. Bank (C. C. A.) 25 F.(2d) 684, 688.

The trial court based its findings on the case of Rankin v. City Nat'l. Bank of Kansas City, 208 U. S. 541, 28 S. Ct. 346, 52 L. Ed. 610, which was an affirmance of an opinion by this court in the case of Cherry, Receiver, v. City Nat'l. Bank of Kansas City (C. C. A.) 144 F. 587.

However, the holdings in this case, as well as cases of a similar nature, turn upon the fact that the complaining bank secured some benefit from the transaction, and hence the arrangements made by its officers were properly considered as transactions made by the bank itself.

Here there is no evidence, nor any findings of fact by the trial court, that the transaction between the officers of the Frankfort bank and the Emmetsburg bank resulted in any benefit to the Frankfort bank; therefore, the case relied upon by the trial court is not in point.

The majority opinion limits the plaintiff's right to recover on an implied contract, as alleged, to repay money had and received. Clearly such allegation is broad enough to permit a recovery on implied contract to repay money expended because of the false credit permitted by the Emmetsburg bank.

I would direct judgment for plaintiff.