FLOWER v. COMMERCIAL TRUST CO.†

In re JONES DRY GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1915.)

No. 4206.

1. EVIDENCE ☞459—PAROL EVIDENCE TO VARY WRITING.
    That a note evidencing a loan was signed in the names of the chief officers of a corporation rather than in the name of the corporation itself did not, under the parol evidence rule, prevent proof that the loan was actually made to the corporation, since while this was strong evidence tending to show what the contract was, it could not change the essential character of the contract as shown by all the proof.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1722, 1906–1910, 2109–2114; Dec. Dig. ☞459.]

**2. BANKRUPTCY ⬤➝340—PROOFS OF CLAIMS—VARIANCE BETWEEN CLAIM AND EVIDENCE.**

Bankr. Act, July 1, 1898, c. 541, § 57, 30 Stat. 560 (Comp. St. 1913, § 9641) provides that proof of claims shall consist of a statement under oath setting forth the claim, the consideration therefor, whether any, and, if so, what securities are held, and what payments, if any, have been made. Forms 33 and 34 (89 Fed. xliii, xliv, 32 C. C. A. xliii, xliv) in bankruptcy require the proof of claims to contain a statement that the bankrupt is justly and truly indebted to the claimant in the sum therein stated, a statement of the consideration of the debt, and that no part of it has been paid except as therein stated. *Held,* that where the proof of claim set forth the amount of the debt and alleged the consideration to have been a loan by the claimant to the bankrupt, and the proof showed such to be the fact, it was immaterial whether the claim pleaded was one for money had and received, or whether the evidence failed to show such a claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. ⬤➝340.]

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valbenburgh, Judge.

In the matter of the Jones Dry Goods Company, bankrupt. From a decree allowing the claim of the Commercial Trust Company, Henry C. Flower, trustee, appeals. Affirmed.

Justin D. Bowersock, of Kansas City, Mo. (Lester W. Hall, Inghram D. Hook, and Robert B. Fizzell, all of Kansas City, Mo., on the brief), for appellant.

W. H. H. Piatt, of Kansas City, Mo. (Thomas R. Marks and Brown Harris, both of Kansas City, Mo., on the brief), for appellee.

Before ADAMS and CARLAND, Circuit Judges, and AMIDON, District Judge.

ADAMS, Circuit Judge. The Commercial Trust Company filed with the referee in charge of the estate of Jones Dry Goods Company in bankruptcy a proof of claim against that estate for $15,000, stating as its consideration that it was for money loaned to the bankrupt and received and used by it for its own use and benefit. Objections having been made to its allowance, the referee heard proof and made an order disallowing it. Upon a petition for review the district court reversed that order of the referee, and made an order allowing the claim for the amount loaned, with accrued interest, aggregating $15,132.50. From that order the trustee appealed to this court. He assigned for error that the district court erred in allowing the claim because the evidence did not show that the claimant loaned the money to the bankrupt company and because the court permitted the use of parol evidence to vary the terms of a written contract which he claims fixed the rights of the parties, and elsewise as hereinafter stated.

The dry goods company was a corporation engaged in a general merchandise business in Kansas City, Mo. Two brothers, L. M. and J. L. Jones owned most of its capital stock, one being its president and treasurer and the other its vice president and secretary. L. M. Jones, the president, went to St. Louis, where the claimant

trust company was engaged in business, and there negotiated for the loan in question, and after returning to Kansas City, the transaction was closed by correspondence. L. M. and J. L. Jones signed their individual names to a note for $15,000, and forwarded it to the claimant inclosed in a letter written on a letterhead of the Jones Dry Goods Company and signed by L. M. Jones in his official capacity as president, as follows:

"May 11, 1909.    Commercial Trust Co., St. Louis, Mo.—Dear Sirs:    Mr. Walter S. Dickey called the writer on the telephone this morning and informed me you desired $15,000.00 of the paper of my brother and myself, something along the lines suggested in our correspondence and conversation some time ago.    We therefore inclose herewith note for $15,000.00 dated May 11th, maturing September 10th, 1909, signed by L. M. Jones and J. L. Jones with collateral of 180 shares of 6% preferred stock of Jones Dry Goods Company. This paper is to be discounted at the rate of 6%.

"You may please place $6,000.00 of the proceeds of this paper to the credit of Jones Bros. Banking Company of this city.    We inclose herewith signature cards of those entitled to check against the account of Jones Bros. Banking Company.    The remainder of the proceeds you may please remit to us in St. Louis, New York or Kansas City Exchange.

"We have executed this paper in the way we understood from Mr. Dickey, would be satisfactory to your company.    If there is any error anywhere, kindly let us know and we will correct it.

"Assuring you of our pleasure in doing this business with you, and believing our relations will be mutually pleasant and profitable, I am,

"Very truly yours,                    [Signed]   L. M. Jones, Prest."

The Jones Bros. Banking Company referred to in the letter was a private bank owned by the dry goods company and operated for its convenience inside the store. The dry goods company also carried an account on its books known as the "L. M. and J. L. special account," not involving any of the personal debits and credits of the two brothers, but employed by the dry goods company whenever money was borrowed for the uses of the company which the company, for reasons satisfactory to itself, did not wish to appear on its books, in the notes payable account. Upon receiving that note the claimant, trust company, placed $6,000 to the credit of the Jones Bros. Banking Company, which amount by appropriate bookkeeping entry was forthwith turned over to the dry goods company, and mailed a cashier's check, payable to the order of Jones Dry Goods Company for the sum of $8,695, the remainder of the proceeds of the note after deducting the interest to accrue, to the Jones Dry Goods Company, Kansas City, Mo. Both these sums were subsequently used by the dry goods company in the prosecution of its regular business.

In addition to this letter and the facts just stated oral testimony of several witnesses was introduced concerning the negotiation for the loan as it actually occurred between the president of the dry goods company and the president of the claimant, trust company, at the time it was first negotiated between them in St. Louis. On the whole evidence Judge Van Valkenburgh, the learned District Judge who heard the case, made the allowance, stating in a memorandum made at the time, as follows:

"A reading of the record relating to that claim convinces that the loan was made to the Jones Dry Goods Company, and for its benefit, although the

note was made by L. M. and J. L. Jones. * * * Furthermore, beyond question the Dry Goods Company received the full benefit of the money in exact accordance with the understanding. Nine thousand dollars, less discount, was sent directly to the Jones Dry Goods Company, by cashier's check, and the remaining $6,000 was deposited * * * to the credit of the Jones Bros. Banking Company, whence it found its way into the dry goods company, and was used by it in due course of business."

The trial judge, by reason of his familiarity with local conditions and probably with the character of the individual witnesses, was peculiarly well fitted to pass on the question of fact here involved, and we might indulge a permissible presumption in favor of the correctness of his conclusion of fact, but as counsel for the trustee earnestly contend that there was no substantial testimony tending to show that the loan was actually made to the dry goods company, we have carefully examined and scrutinized all the oral testimony in the case, and, taking it, in connection with the letter and other important and uncontradicted facts to which we have already called attention, we conclude, without attempting to analyze the evidence in detail, that the trust company did not loan the money in question to L. M. and J. L. Jones, or either of them, but did loan it to the dry goods company, that the latter company received it and employed it in the prosecution of its legitimate business, and that the claim was properly allowed as a debt against the estate of the dry goods company *unless* the trust company's right to such allowance is defeated by one or the other of the following considerations to which counsel for the trustee invite our attention: They contend that the trust company's rights were fixed by the note as actually taken by it, signed by the president and secretary of the company, as individuals, that it evidenced no obligation of the dry goods company, but only one against the makers as individuals, and that the terms of that contract cannot be varied by parol evidence.

[1] The general rule that a written contract when complete in itself cannot be varied by parol evidence is not questioned, but we think the rule has no application to the facts in this case. It begs the fundamental question involved here: What was the contract as actually made between the parties? Was it for a loan of money to the dry goods company or was it for a loan of money to L. M. and J. L. Jones? We have already answered this question to the effect that the real contract was a loan to the corporation. Such being the case, the fact that for prudential or other business reasons the parties preferred that the note evidencing the loan should be signed in the names of the chief officers of the corporation rather than in the name of the corporation itself, while strong evidence tending to show what the real contract was, cannot, of itself, change the essential character of the contract, as shown by all the proof, taken together, to have been actually made by them. Signing the note in that way was an incident, attending the execution of the contract as actually made, and this was probably done to meet some emergency of business suggested by the necessity for keeping the "L. M. and J. L. special account." The contention, therefore, that oral proof of a loan to the corporation was improper because varying the terms of

223 F.—21

a written contract cannot be sustained. This conclusion is supported by the doctrine announced in the case of Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 427, 48 C. C. A. 482.

[2] Much technical learning was displayed in brief and argument on the question whether the facts of the case sustained the proof of claim based on the common count for money had and received, as presented to the referee by the claimant. The contention on the part of the trustee was that the action for money had and received cannot be based upon an agreement of the parties, but rests upon what is commonly called a contract implied in law. It is argued that when one has received money belonging to another under circumstances which make it inequitable and unconscionable for the former to retain it, the law raises an implied promise on his part to return the money to the true owner, and that this kind of a promise only will support a count in assumpsit for money had and received. In other words, the contention is that only when one has no contractual rights against another for money unconscionably retained by the latter the law comes to the aid of the former in order to effect substantial justice.

We deem it unnecessary to dwell long upon the interesting inquiry suggested by this argument. The Bankruptcy Act, section 57, and forms of the Supreme Court Nos. 33 and 34 (89 Fed. xliii, xliv, 32 C. C. A. xliii, xliv), adopted pursuant to its provisions for the guidance of practioners, make procedure very simple and of easy comprehension. All that is required is to state that the bankrupt is indebted to the claimant in a certain amount of money, what the consideration of the debt was, and that no part of it has been paid. Referring again to the proof of claim as made by the trust company in this case, it appears that it complied with all the provisions of the law in making its claim. It set forth the amount of its debt and alleged the consideration to have been a loan by it to the Jones Dry Goods Company of the sum of $15,000. It unnecessarily further alleged that the money was received, accepted, and used by the company for its own use and benefit. In other words, the claimant set forth in this way the very facts of the case as we have found them to be. Whether this amounts to a count in assumpsit for money had and received or not is quite unimportant. It set forth facts sufficient to constitute a cause of action. It stated in plain language a cause of action for money loaned by the claimant to the bankrupt, and that was sufficient under whatever classification of actions it may properly fall. The cause of action so pleaded was sustained by the proof.

Other interesting questions were argued by counsel, to all of which we have given careful consideration, but we find nothing in them to change the conclusion already indicated. The result is that the decree below must be affirmed.

It is so ordered.