## LEONARD v. STATE EXCHANGE BANK OF ELK CITY, OKL.

(Circuit Court of Appeals, Eighth Circuit.    September 13, 1916.)

### No. 4628.

1. BILLS AND NOTES ⊜═262—ACCOMMODATION MAKERS—RIGHTS OF.

One signing a note for the accommodation of another, if compelled to pay it, may ordinarily recover the amount paid from the one for whose accommodation the note was made.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 611: Dec. Dig. ⊜═262.]

2. BANKS AND BANKING ⊜═109(1)—ACTS OF OFFICERS—LIABILITY ON NOTE.

Notes signed by the officers to obtain a loan for a bank constitute legal obligations of the bank, where the money was received by it, and all parties understood the nature of the transaction.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 257, 258; Dec. Dig. ⊜═109(1).]

3. SUBROGATION ⊜═7(7)—PRINCIPAL AND SURETY—RIGHTS OF.

Where officers of a bank executed notes for the accommodation of the bank and were compelled to pay them, the officers, being only sureties and the bank the real party in interest, are subrogated to the rights of the holders.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 26, 77, 92; Dec. Dig. ⊜═7(7).]

4. BILLS AND NOTES ⊜═106—VALIDITY—LEGALITY OF OBJECTION—RELIEF OF PARTIES.

Officers of the defendant bank, to obtain a loan for it without impairing its credit, executed their own notes. On maturity the notes were paid by plaintiff, one of the officers. The parties to the transaction intended to conceal it from the state bank commissioner. Rev. Laws Okl. 1910, § 269, provides that every officer or agent of any bank doing business under the laws of the state, who shall unlawfully and knowingly subscribe to or make any false report or false entries in the books of the bank, or knowingly subscribe or exhibit any false writing or paper, with intent to deceive any person as to the bank's condition, shall be deemed guilty of a felony and punished by a fine or imprisonment or both. *Held* that, as the act prescribes a specific penalty and does not declare void notes made with intent to deceive as to the condition of the bank, the notes executed by the officers were valid and enforceable against the bank in the hands of the holder, and having been paid by plaintiff, who was subrogated to the holder's rights, he could enforce them against the bank.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 219, 225–232; Dec. Dig. ⊜═106.]

5. BANKS AND BANKING ⊜═109(1)—ACTS OF OFFICERS—NOTES.

In such case, before payment of the notes, the officers, who were the sole stockholders, transferred their stock, and the transferees in turn

---

disposed of the stock. *Held* that, though the last purchasers did not know of the nature of the transaction and the bank's liability, the bank was liable for repayment of the loan, having received the full consideration and being considered a separate entity for such purposes; this being particularly true where the last purchasers had received a written guaranty protecting them against all loss and damage by reason of any transactions or acts of the bank or its officers prior to the date of purchase.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 257, 258; Dec. Dig. ☞109(1).]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by William D. Leonard against the State Exchange Bank of Elk City. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded.

Frederick B. Owen, of Oklahoma City, Okl., and W. H. Hills, of Enid, Okl. (George L. Edwards and Walter J. G. Neun, both of St. Louis, Mo., Guy S. Manatt, of Enid, Okl., and Henry E. Asp, Henry G. Snyder, and Walter A. Lybrand, all of Oklahoma City, Okl., on the brief), for plaintiff in error.

Frank Wells, of Oklahoma City, Okl. (James R. Keaton and David I. Johnston, both of Oklahoma City, Okl., F. L. Williams, of Clay Center, Kan., and Frank Winters, of Elk City, Okl., on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge. This was an action at law brought by Leonard, plaintiff in error, to recover from the State Exchange Bank of Elk City, Okl., a sum of money paid by him to the National Bank of Commerce in St. Louis because of certain notes alleged to have been signed by him and two others for the accommodation of the defendant bank. The parties waived a jury in writing, and agreed that the case should be tried to the court. The court made a finding of facts and rendered judgment thereon for defendant bank. This writ of error, sued out by plaintiff Leonard, challenges that judgment, and the only question presented by the assignment of errors is whether the finding supports the judgment.

The court made the finding in words and figures as follows:

"The court finds that the plaintiff in this action, together with Charles E. Davis and J. A. Moon, were the only officers and directors and sole stockholders of the defendant bank herein, at the date of the transactions herein litigated.

"The court further finds that during the time the said plaintiff herein, together with Charles E. Davis and J. A. Moon, were such officers, stockholders, and directors, they made, executed, and delivered to the National Bank of Commerce in St. Louis, in their individual capacity, their three certain promissory notes in writing, obligating themselves to pay the said National Bank of Commerce in St. Louis, the aggregate sum of twelve thousand five hundred ($12,500) dollars; that at the time of the execution and delivery of said notes to the National Bank of Commerce in St. Louis, the plaintiff herein, and Charles E. Davis and J. A. Moon, took from the note case of the State Exchange Bank, defendant herein, bills receivable, aggregating approximately

the amount of the loans that they were securing from the St. Louis bank, and forwarded the same to the said St. Louis bank to secure said loans, and that when said notes therefor and the said securities were forwarded to the St. Louis bank, it was instructed to place the proceeds of said loans to the credit of the defendant herein, on the books of the National Bank of Commerce in St. Louis, and the said loans were obtained *solely for the use and benefit* of the defendant herein.

"The court further finds that the said National Bank of Commerce in St. Louis pursuant to said request, placed to the credit of the defendant herein, the sum of twelve thousand five hundred ($12,500) dollars, less the discount, on the books of the St. Louis bank, and that said sum was checked out of the St. Louis bank by the State Exchange Bank, defendant herein, and used in the usual course of business for its sole and entire benefit, and that the plaintiff herein received nothing as a result of the signing of said notes, but that the defendant herein received all the benefits and proceeds thereof.

"The court further finds that at the time the bills receivable were taken out of the note case of the State Exchange Bank, defendant herein, an entry was made on the bills receivable record of said bank, crediting the same with the amounts of the notes so taken out and forwarded to St. Louis; that at the same time and on the same date, the National Bank of Commerce in St. Louis, was debited on the journal of the State Exchange Bank of Elk City, with the amount of said notes signed by the plaintiff herein, and his associates, and that the said National Bank of Commerce in St. Louis, at the same time and place was debited on the general ledger of the State Exchange Bank of Elk City with the amount of the notes signed by the plaintiff herein and his associates.

"The court further finds that the plaintiff and his associates had the object in the making of said loans in their individual names and of the said entries in the books of the defendant bank that no such indebtedness of said bank would appear on its books or in the reports of its financial condition to the Oklahoma state bank commissioner, and that the same was accordingly withheld therefrom.

"The court further finds that the plaintiff herein sold his stock in said bank to Charles E. Davis, one of his associates and one of the signers of the said notes, and that the said Charles E. Davis sold said stock, and that the stock of said bank is now owned and controlled by G. T. Patterson, P. E. Wheeler, M. Scannell, G. H. Crumley, O. H. Cafky, Frank Winters, J. D. Davault, J. S. Pettus, W. E. Allen, A. P. Harris, W. E. Clark, T. J. Clark, and F. L. Clark.

"The court further finds that the said William D. Leonard was compelled to pay to the National Bank of Commerce in St. Louis, on said indebtedness, the sum of $9,457.92 by giving his note and securing the same by a first mortgage on certain real estate, said note bearing interest at the rate of 7 per centum per annum, and that the said National Bank of Commerce in St. Louis accepted the same from the plaintiff herein as a final settlement of all amounts due it on the three notes of $12,500 above referred to.

"The court further finds that at the time the loans of $12,500 were made from the National Bank of Commerce in St. Louis, the plaintiff in this action, and Charles E. Davis and J. A. Moon, were the sole and only stockholders in said defendant bank, and that the stockholders who now own the stock purchased their stock from parties, other than the plaintiff herein, long after the said loans had been consummated, and the proceeds thereof used by the defendant bank herein, and without knowledge or notice of the liability of the defendant to the said National Bank of Commerce in St. Louis.

"The court further finds that at the time the said stockholders who now own said stock purchased the same, their vendors in writing guaranteed them and the defendant bank against all loss and damage by reason of any transactions or acts of the bank, or its officers, prior to the date of said purchase, namely, March 31, 1913.

"The court further finds that the plaintiff herein was one of the active managing officers of the State Exchange Bank, defendant herein, at the time of the loans mentioned above and the entries in the books of said bank, and

that said plaintiff had actual knowledge of said entries, and that the present stockholders of said bank when purchasing their stock relied upon the books of the bank appearing as aforesaid and as showing the true condition of said bank, and that said books did not disclose said loans.

"The court holds that by reason of the facts found as aforesaid, the plaintiff is not entitled to any recovery or relief in this action, * * *" and then rendered judgment in favor of the defendant.

Was that judgment right? Certain comparatively unimportant questions, much debated by counsel, will first be rather summarily disposed of.

[1] (a) If one who signs a note for the accommodation of another is compelled to pay it, he, as a general rule, may recover from him thus accommodated the amount so paid by him.

[2] (b) The fact that the notes negotiated with the Bank of Commerce were actually signed in the individual names of the officers of the Exchange Bank, instead of in the name of the bank itself, is, in itself, of no legal consequence. The money, as understood by all the parties interested, was borrowed for the bank, placed to the credit of the bank, and checked out and used exclusively by the bank for its own purposes. The notes, therefore, created legal obligations of the bank, notwithstanding the fact that they were not executed in the name of the bank. Cherry v. City National Bank, 75 C. C. A. 343, 144 Fed. 587; Flower, Trustee, v. Commercial Trust Co., 138 C. C. A. 580, 223 Fed. 318, and cases cited.

[3, 4] Defendant's counsel contend that as the transaction with the Bank of Commerce, including the book entries concerning it, was made by plaintiff and his associates with intent to deceive the state bank commissioner as to the condition of their bank, in violation of the provisions of section 269, Revised Statutes of Oklahoma 1910, there can be no recovery by plaintiff in the action. This section enacts that:

"Every officer, director, agent or clerk of any bank, doing business under the laws of the state of Oklahoma, who shall unlawfully and knowingly subscribe to or make any false report or any false statement or entries in the books of such bank, or knowingly subscribe to or exhibit any false writing or paper, with the intent to deceive any person as to the condition of such bank, shall be deemed guilty of a felony, and shall be punished by a fine not to exceed one thousand dollars, or by imprisonment in the penitentiary not exceeding five years, or by both such fine and imprisonment."

It is worthy of note that this act prescribes a definite penalty for its violation, and does not in terms avoid a contract made in its attempted or intended violation. In these respects it is like the acts of Congress (sections 5209–5213, R. S. 1878 [Comp. St. 1913, §§ 9772–9777]), relating to false reports and false entries by officers and agents of national banks. In the case of Hanover National Bank v. First National Bank, 48 C. C. A. 482, 109 Fed. 421, this court had occasion to consider a question quite similar to that now being considered, on a state of facts in essential respects like those involved here. The question there presented, and decided, was whether a New York bank, which had rediscounted promissory notes for a Kansas bank without the indorsement of the bank itself (accepting in lieu thereof the personal

indorsement of its president and certain other assurances for their payment), could recover against the Kansas bank, notwithstanding the facts, pleaded as a defense by the Kansas bank, that the arrangement was made by the officers of the two banks for the purpose of enabling the Kansas bank to conceal the fact of its contingent liability on those notes from the Comptroller of the Currency in making reports of its condition to him, as required by law. This defense received the careful consideration of the three sitting judges, who expressed themselves in separate opinions, and rendered a judgment overruling that defense.

After a careful consideration of the present case, in the light of the able arguments of counsel, we are unanimously of the opinion that we should adhere to the conclusion reached in that case. The reasons for doing so are so cogently stated by Judges Sanborn and Thayer in the former case that it would be idle and useless for us to now restate them.

A distinction is sought to be drawn by counsel for defendant, because of the fact that in the former case the action was brought by the New York bank against the Kansas bank directly, on some of the rediscounted notes, whereas in this case the action is brought by the accommodation maker of the notes against the bank accommodated, for money paid by him in satisfaction of the notes. We think this is a distinction without a difference. The Bank of Commerce stands in its relation to the Exchange Bank as the New York bank stood in its relation to the Kansas bank.

Plaintiff and his comakers, while principal debtors to the Bank of Commerce, were sureties so far as the Exchange Bank, the primary debtor, was concerned, and plaintiff, having paid the debt of the latter, may, on familiar principles of subrogation, stand in the shoes of the creditor and whatever rights the creditor had against the primary debtor ought to be and are available to the sureties. We discover no reason, notwithstanding the distinction pointed out, why the doctrine of the Hanover Bank Case is not fully applicable to this, and on the authority of that case we hold that the fact that the notes were executed in the name of plaintiff and his cosureties with the intent to conceal the true condition of the bank from the state bank examiner constitutes no defense to this action.

[5] Defendant pleaded, for another defense, that at the time of the transaction with the National Bank of Commerce the plaintiff and his two associate makers of the notes in question were the sole and only stockholders of the Exchange Bank, but that since then and prior to the beginning of this suit they had sold and transferred all their stock to other persons who subsequently transferred the same, in varying amounts, to 13 other persons, naming them, who, at the time of purchasing their stock in 1913, had no actual knowledge of the indebtedness of the Exchange Bank to the Bank of Commerce, but relied on the books of the bank as showing the true financial condition of the bank, and that those books showed no such indebtedness to the Bank of Commerce. Defendant's counsel contend that by reason of these facts plaintiff is estopped, as against the bank, and especially as against

the 13 present stockholders, from asserting any claim against the bank.

The finding of facts made by the court discloses that the facts set forth in this defense are substantially truly stated, but the court finds another important fact to be true also, namely:

"That at the time the said stockholders who now own said stock purchased the same, their vendors in writing guaranteed them and the defendant bank against all loss and damage by reason of any transactions or acts of the bank, or its officers, prior to the date of said purchase, namely, March 31, 1913."

No injury was done to the Exchange Bank itself or to any of its then existing stockholders by the transaction with the Bank of Commerce. The Exchange Bank, by the voluntary action of plaintiff and his associates in 1911 signing their individual names to the notes, obtained for its sole use and benefit $12,500 from the Bank of Commerce, which it employed in the usual course of its business; the plaintiff or his associates receiving nothing whatever for their accommodating service. The Exchange Bank needed money, and, for reasons satisfactory to its officers, decided to secure it without injuring its credit, if possible, and resorted to the not uncommon practice, as judicial history discloses, of borrowing it in such a way as not to disclose the fact of an increase in the present indebtedness of the bank. No graft or individual advantage to the accommodating signers appears in this record. The record discloses nothing to impeach the essential honesty of the transaction, so far as the parties directly interested were concerned. When defendant repays to plaintiff the amount paid by him for its account, it will pay out only what it had actually received from the Bank of Commerce as a result of plaintiff's voluntary accommodating act. In other words, it will have lost nothing by the transaction, except possibly the loss incidental to the forced sale of its collateral, about which, if any such loss was made, no point is now made by defendant's counsel.

The stockholders of a corporation, as illustrated in this case, are a changing body—stockholders of to-day may not be to-morrow, or next week, or next year. To hold that a transaction of to-day, approved by the corporation itself and by its entire body of stockholders, intended to serve the best interests of the corporation, as now understood by its governing board, can be assailed a year or more later by a board of directors chosen by stockholders who may then have acquired a controlling interest in the stock, not for dishonesty or fraud in the transaction, but for some of the incidental consequences of the transaction, would introduce unending confusion and disorder. As the Exchange Bank received the full benefit of a transaction conducted with its full approval and that of all its stockholders, as they existed at the time of the transaction, the plaintiff would clearly not now be estopped from asserting his legal rights against the bank itself.

While it is true, as argued by defendant's counsel, that the separate entity doctrine of corporations in their relation to their stockholders should not always be enforced, certainly not in cases where its enforcement would work injustice and wrong, we are unable to find in this case any reason for not applying it here. Plaintiff, not being

236 F.—21

estopped from asserting his legal rights against the corporation as constituted in 1911 when the notes were negotiated with the Bank of Commerce, is not estopped as against that corporation, or its stockholders, as constituted in 1913 when the present stockholders purchased their stock.

For another reason, also, we think there is no estoppel even as against the 13 present stockholders. They apparently did not much rely, in purchasing their stock, upon the showing made by the books of the bank at the time. They required, and secured, a written guaranty from their vendors against all loss or damage by reason of any transaction or acts of the bank or its officers prior to the date of that purchase, which was March 31, 1913.

Perceiving no reason why the Exchange Bank should not repay to plaintiff the amount of money paid by him for its accommodation, the judgment of the District Court is reversed, and cause remanded to that court, with instructions to grant a new trial.