## SMITH v. ROBINS.

### In re COX–BLODGETT DRY GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. September 20, 1916.)

No. 4551.

1. APPEAL AND ERROR ☞1067—HARMLESS ERROR—INSTRUCTIONS.

Defendant lent a sum of money to an officer of a corporation, and one-half of the loan was paid with a check, drawn on the funds of the corporation. After the corporation's bankruptcy its trustee sued to recover the amount of the payment on the theory that, the corporation not being indebted to defendant, the payment was without consideration. Defendant contended that the money lent to the corporate officer was by him transferred to the corporation under an agreement that such sum should be applied on his indebtedness to the corporation, and that if the borrower was unable to discharge the loan the corporation would do so. The court charged in effect that if the officer borrowed the money for his own use, and not for the benefit of the corporation, repayment of the loan out of the corporate funds was without consideration, so that defendant would be liable, but, if the money was borrowed for the benefit of the corporation, defendant was not liable. *Held* that, in such case, the refusal of a charge suggesting to the jury consideration of the question whether defendant knew or had reason to know that the officer, in making repayment to him, was using the funds of the corporation, did not injure plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

2. CORPORATIONS ☞432(6)—LOAN TO OFFICER—PAYMENT—RECOVERY—EVIDENCE—MATERIALITY.

In such case, while the evidence of the officer's indebtedness to the corporation before securing the loan might be relevant on whether he secured it for the corporation or himself, the exclusion of the evidence of indebtedness without any showing as to time was proper, for it would confuse the jury and evidence as to indebtedness after the loan was inadmissible.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1731, 1743, 1762; Dec. Dig. ☞432(6).]

3. CORPORATIONS ☞413—OFFICERS—AGREEMENT—ENFORCEMENT.

Where a corporate officer secured a loan from defendant and delivered the proceeds to the corporation under an agreement that the corporation should repay the loan, which was for its benefit, an enforceable obligation requiring repayment by the corporation was created, so that the corporation's trustee in bankruptcy could not recover payments made to defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1647–1649; Dec. Dig. ☞413.]

4. CONTRACTS ☞330(3)—PROMISES—ENFORCEMENT.

A promise made for a valuable consideration to a third person for the benefit of another is one which in equity, if not in law, may be enforced by the third person directly.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1592–1594, 1596, 1602, 1603; Dec. Dig. ☞330(3).]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by O. Z. Smith, as trustee in bankruptcy of the estate of the Cox-Blodgett Dry Goods Company, against Raymond Robins. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Jean Madalene, of Wichita, Kan. (S. B. Amidon, of Wichita, Kan., on the brief), for plaintiff in error.

C. G. Yankey, of Wichita, Kan. (R. L. Holmes and W. E. Holmes, both of Wichita, Kan., on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge. O. Z. Smith, plaintiff below and plaintiff in error here, brought this action as trustee of the estate of the Cox-Blodgett Dry Goods Company in bankruptcy, to recover from the defendant, Raymond Robins, the sum of $12,583.33, alleging in his petition that on or about January 1, 1913, the Dry Goods Company, a corporation of the state of Kansas and doing business in Wichita in that state, which was about a year later adjudicated a bankrupt, executed its check for $12,583.33, payable to Robins, and delivered the same to him, who afterwards collected it and received the amount of money called for therein; that the Dry Goods Company was at the time not indebted to Robins for that or any amount of money, but that it was so paid to him without any consideration received by it therefor; that thereby the defendant Robins became indebted to the Dry Goods Company in that amount of money as for money had and received to its use.

The defendant answered the petition, admitting that he received the amount of money sued for in the way and manner alleged in the petition, but denied that it was so received by him without any consideration paid therefor; and for a further defense he alleged that in March, 1912, he loaned to one Thomas Blodgett the sum of $12,500 for the use and benefit of the Dry Goods Company and took the note of Blodgett therefor; that Blodgett, on receipt of the money so loaned to him, turned it over to the Dry Goods Company, which afterwards used it for its own purposes; that, although the loan was made to and in the name of Thomas Blodgett, it was in fact made to and became the debt of the Dry Goods Company; that the transaction was conducted in Blodgett's name pursuant to an express agreement and understanding that, if Blodgett would borrow the money from defendant and turn the same into the treasury of the Dry Goods Company for its use, the Dry Goods Company would repay the same to the defendant, or such part thereof as Blodgett was unable to pay, when required to do so by the defendant; that the Dry Goods Company, pursuant to its obligation so incurred, in January, 1913, paid, at the request of defendant, the amount of $12,583.33, the balance then due on the loan so made; that the payment was made pursuant to the aforesaid agreement and understanding, which constituted the real consideration for the payment of the money now sued for by the Dry Goods Company to Robins.

Plaintiff in his reply denied the allegations of the defendant's an-

swer, and thereby the simple issue was joined whether the Dry Goods Company received the money borrowed in the name of Blodgett, and assumed the obligation of paying it back to defendant, or whether it was an individual transaction with Thomas Blodgett only. The case came on for trial to a jury, when, after plaintiff had introduced evidence tending to make a prima facie case, the defendant took the affirmative and produced evidence tending to show the following facts:

That Robins was a wealthy philanthropist, residing in the city of Chicago, and engaged generally in social work and promoting industrial improvements; that he, in January, 1912, was in Wichita, Kan., interesting himself generally in working out programs for assisting several Western cities in inaugurating certain industrial improvements. He there met Thomas Blodgett, the treasurer of the Dry Goods Company, a man of considerable importance in Wichita, who was also interested in working out certain industrial improvements in Wichita, and after an investigation of about a week Robins entered into negotiations with Blodgett for loaning to him money to inaugurate an overall factory in connection with the business of his company at Wichita, and for working out in that city a program of wages and conditions for a model factory for the West. While there Robins met Mr. Cox, the president of the company, and went through several departments of the business of the company, and, becoming satisfied that it was a strong going concern, in a subsequent interview with Blodgett, agreed to loan him $25,000, provided satisfactory security could be furnished to work out the scheme they had been talking about. Robins then left Wichita for a trip throughout the West, where he was engaged in similar work.

After he left, Blodgett informed Cox, the president of the company, fully of Mr. Robins' offer, and Cox agreed with Blodgett that it would be best for him to borrow the money, but Cox insisted that as Blodgett was largely indebted to the firm, and as the firm then needed the money, it should, when secured, be turned over to the company by him in payment, or partial payment, of Blodgett's indebtedness, for the use of the company in its general business. This was agreed to by the two officers of the company, on condition and with the distinct understanding and agreement then made that if Blodgett could not pay the money back to Robins when due, or when Robins required it, the company would make the payment and charge the amount so repaid back to the account of Blodgett; and thereupon Blodgett advised Robins, who was then in California, that he would like the money. It was accordingly remitted to him, and he forthwith turned it over to the Dry Goods Company for its use, and Blodgett's account was credited with it—all as agreed to between Blodgett and Cox. It is needless to say that Robins does not appear to have been advised of this agreement between Blodgett and Cox.

Blodgett, on receiving this money on March 7, 1912, executed his personal promissory note for $25,000, payable to Robins six months after date. Some time prior to its maturity Robins advised Blodgett that, as he was about to go to Europe for an extended trip, he would

like to have the note paid at maturity, September 7, 1912. This demand, though a surprise, was met by a promise to pay one-half of it ($12,500) at maturity, and with a request that the payment of the balance be postponed for three months, or until December. This, after some correspondence, was agreed to. On September 20, 1912, Blodgett raised $12,500 and paid the same to Robins as agreed, and when the balance became due in December he was not able to provide for its payment in full, but did, some time before that, deposit $10,000 with the company in preparation for its payment. On January 1, 1913, the company, at the request of Blodgett, by its secretary and bookkeeper, who was duly authorized to sign checks for the company, drew a check upon its funds in the bank for the balance then due on the note, with interest, namely, $12,583.33, and sent the same to Robins, by whom or his agent it was duly received and collected. This is the payment alleged to have been made by the company to Robins without consideration, for the return of which Robins is now sued by the trustee of the company.

The plaintiff then produced additional evidence tending to prove the contrary, and to show that the loan was simply an individual loan to Blodgett, creating only an obligation on his part to repay it and that the company assumed no such obligation. During the progress of the trial evidence was offered by plaintiff tending to show the amount of Blodgett's indebtedness to the company at various times prior to or after the transaction in question, which was excluded by the court as immaterial to the issues presented by the pleadings. Counsel for plaintiff then requested the court to charge the jury as follows:

"That the form of check sued on was sufficient to convey notice to Raymond Robins that the check was drawn on the funds of the corporation, and that the same was being used in the payment of the personal debt of Blodgett"

—and also requested the court to give several other instructions of the same general character—all of which, however, presented the same legal proposition. These instructions the court refused to give, and, proper exceptions being saved, then charged the jury, amongst other things, as follows:

"Now, the undisputed facts are, gentlemen, that in the month of March, 1912, the defendant in this case loaned to Mr. Blodgett the sum of $25,000 and took the note of Mr. Blodgett, and in so far as that transaction was concerned it was a personal transaction between Mr. Blodgett and the defendant in this case, and so far as that transaction was concerned the defendant in this case could hold no one but the maker of that note for its payment. But this is not an action to recover the contents of that note, because that note, so far as the defendant is concerned, has been paid, canceled, and satisfied. The question in this case is whether the defendant has received this sum that is now sued for in this case, of $12,583.33, * * * from the Cox-Blodgett Dry Goods Company, for which it received no consideration. If so, it may recover this money. If not, it cannot recover it from the defendant in this case. * * *

"Again, it is contended the president of the company and Mr. Blodgett, who borrowed this money personally from the defendant in this case, talked it over and agreed the money should be borrowed personally by Mr. Blodgett, and that it should be used for the benefit of the corporation, and was so used, and that the Cox-Blodgett Dry Goods Company, having received the

benefit of it, would pay it back, or assist in paying it back. So now, gentlemen, you see what there is in this case. This was the individual obligation of this man Blodgett. It was not a debt, so far as Mr. Robins was concerned, of the Cox-Blodgett Dry Goods Company; and if, as charged in this petition, without any consideration to the Cox-Blodgett Dry Goods Company Mr. Blodgett, an officer of that company, took the money of the Cox-Blodgett Company and paid his individual debt, without any consideration to Cox-Blodgett Company, as charged in this petition, if you believe that—and the burden of proving that is on the plaintiff—* * * if the greater weight of all the credible evidence shows that without any consideration to the Cox-Blodgett Company Mr. Blodgett took, or caused to be taken out of the money of the Cox-Blodgett Company this $12,583.33 to pay his own individual debt, then that was the money of the Cox-Blodgett Company and went to pay an obligation they did not owe. If that is true, the plaintiff in this case must recover.

"On the other hand, if Mr. Blodgett borrowed this money from the defendant for the use and benefit of the Cox-Blodgett Company, and Mr. Blodgett, when he received this money, turned it into the Cox-Blodgett Company, and it had the use of it, it ought to pay it, and the defendant in this case ought not to pay it back, because it is very proper, if the firm did get the use of the money, that it should pay it back."

The court also charged the jury as follows:

"The fact that this check was made by the Cox-Blodgett Company that went to pay this money would cast no suspicion on the transaction, because Mr. Robins, the party to whom the money was coming, like any other person, would presume that Mr. Blodgett had the money in the hands of the company with which to pay this money."

To the giving of these charges, and each specification thereof, plaintiff's counsel duly excepted. The jury, as already stated, found a verdict for the defendant on which judgment was entered.

The only assignments of error relied on and argued by counsel for plaintiff in error are these: (1) The action of the court in refusing to give the instruction requested by plaintiff's counsel, heretofore set out, and in charging the jury to the contrary; and (2) the action of the court in excluding evidence as to the state of account between Blodgett and the Dry Goods Company, and especially evidence showing that Blodgett owed the company $84,000.

[1] The instruction, so requested to be given and so refused by the court, is in the following words:

"* * * The form of the note sued on herein was sufficient to convey notice to Raymond Robins that the check was a check drawn on the funds of a corporation and that the same was being used in payment of the personal debt of Tom Blodgett."

There was no error in refusing to give this instruction, or in giving the contrary advice to the jury, as found in the charge. The instruction was foreign to the only issues created by the pleadings, and imposed upon the plaintiff a burden he was not required to carry, and a greater burden than the court, in its charge, imposed upon him. The court, in its charge, told the jury, in effect, that if Blodgett borrowed the money for his own use, and not for the use and benefit of his company, the repayment of the loan out of the funds of the company was without consideration, and defendant was liable to the plaintiff for the return of the money so paid to him. But, on the other hand, if

Blodgett borrowed the money for the use and benefit of the Cox-Blodgett Company, and Mr. Blodgett, when he received it, turned it over to the company and the company had the use of it, it ought to have paid it, as it did, and the defendant ought not to be required to pay it back. This charge clearly advised the jury that defendant was liable for the return of the money if it was borrowed by Blodgett for his own use, and not for the use of the company, whether he (the defendant) knew or had reason to believe Blodgett was making use of the company's money for his own purposes or not. How, then, could plaintiff have been injured by the court's failure to suggest to the jury any consideration of whether defendant knew or had reason to believe Blodgett was so using the funds of the company? Certainly plaintiff was not injured by the refusal to give the instruction requested by him.

[2] Did the court err in excluding evidence relating to the state of account between Blodgett and the Cox-Blodgett Company, and especially in excluding proof offered to the effect that Blodgett owed the company $84,000? Before considering this assignment the state of the record should be carefully noted. Counsel for plaintiff, in asking questions relating to this subject, stated, on inquiry by the court, that he was not able to fix any time when Blodgett was so indebted to the company, or to fix any specific dates when the accounts were taken. He said, "We cannot state whether it occurred before or after" the transactions involved in this case, but said we "should let the jury say when it occurred." The court then sustained an objection excluding the evidence, stating at the same time:

"I will allow you to prove anything occurring before, if you can prove anything occurring before."

The court was right. Any evidence of the kind offered relating to the state of accounts between Blodgett and the company prior to the time of the transaction might have been remotely relevant to the inquiry whether Blodgett borrowed the money from Robins for his own use or for the use of the company. This, however, is doubtful; but certainly no such distantly related evidence should have been permitted without so fixing the time before March, 1912, when the money was borrowed, as to have been influencive with Blodgett in securing the money. For want of definiteness as to time, the evidence was clearly inadmissible. If admitted, it could have served no other purpose than that practically avowed by counsel for plaintiff, namely, to confuse the jury. There was no error in excluding it.

Some other arguments are made by counsel in their brief, to which we have given careful consideration, and find nothing in them which warrants a reversal of this judgment. The court, in its charge to the jury, reduced the case to the simple issue created by the pleadings, excluding all collateral or confusing propositions, and in this way the jury got some real help from the court, and brought in what seems to us an intelligent and correct verdict.

[3] We have so far confined ourselves closely to the pleadings in the case and to the actual proceedings of the trial under those pleadings; but it may not be amiss to observe that the promise made by the presi-

dent of the Cox-Blodgett Company to repay the money borrowed from Robins for the use and benefit of the company, and actually so used by the company, created an obligation on the part of the company to pay the money to Robins, supported by abundant authority. We have held in the cases of Cherry v. City National Bank, 75 C. C. A. 343, 144 Fed. 587, Flower, Trustee, v. Commercial Trust Co., 138 C. C. A. 580, 223 Fed. 318, and Leonard v. State Exchange Bank of Elk City, Oklahoma, 236 Fed. 316, 149 C. C. A. 448, that facts of the kind just recited are sufficient to subject the Cox-Blodgett Company to direct liability to Robins for the amount of money so borrowed and so used.

[4] Moreover, a promise made for a valuable consideration to a third person, for the benefit of another, is one which in equity, if not at law, may be enforced by the third person directly. Most clearly, then, the voluntary payment by one so legally obligated to make it is supported by a sufficient consideration.

The judgment is affirmed.