MOERSCHEL et al. v. O'BANNON.

In re SCHULTZ DRY GOODS, CARPET & READY–TO–WEAR CO.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1917.)

No. 4896.

BANKRUPTCY ⨺316(1)—CORPORATION—PROVABLE CLAIMS.

Notes given for money borrowed by the maker to purchase the stock of a mercantile corporation, and so used, are not provable against the corporation in bankruptcy as against other creditors, in the absence of its assumption of the debt, although the maker continued to hold practically all of its stock, controlled its business, and made payments of principal and interest from its assets; nor is the position of the holder improved by the fact that the maker afterward substituted for one of his own notes a note of the corporation made by himself as president, but without consideration, nor by the fact that the former owners of the stock paid the existing indebtedness of the corporation from its proceeds.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

In the matter of the Schultz Dry Goods, Carpet & Ready-to-Wear Company, bankrupt; W. D. O'Bannon, trustee. From an order disallowing their claims, Jacob F. Moerschel and Emma C. Linhof appeal. Affirmed.

For opinion below, see 236 Fed. 425.

D. F. Calfee, of Jefferson City, Mo., and D. W. Peters, of St. Louis, Mo. (Calfee & Westhues, of Jefferson City, Mo., on the brief), for appellants.

Ira H. Lohman and W. S. Pope, both of Jefferson City, Mo., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. The Schultz Dry Goods, Carpet & Ready-to-Wear Company was adjudged a bankrupt on March 20, 1916. Its stockholders were Frank J. Linhoff, its president, who owned 238 shares, Emma C. Linhoff, his wife, who owned 1 share, and Ernest C. Moerschel, his brother-in-law, who owned 1 share. The corporation was organized on May 23, 1913, when it succeeded to the business, assets, and liabilities of the Schultz Dry Goods & Carpet Company, a corporation, whose stock was the same in amount and was held by the same stockholders in the same quantities as was the stock of the new company. On February 27, 1909, the old company was a prosperous mercantile concern, all whose stock, except 2 shares, was held by H. E. Schultz, Sr., its president, H. E. Schultz, Jr., its vice president, and George P. Walker, its secretary and treasurer, and on that day they and Frank J. Linhoff agreed in writing that they should sell and convey to him all the stock of the corporation for $55,000, $3,000 of which they acknowledged in the writing that Linhoff had then paid, $32,000 of which was to be paid by Linhoff by February 27, 1909, and for the remainder of the purchase price Linhoff was to make his two promissory notes payable to H. E. Schultz, Sr., for $10,000 each, due in one and two years, respectively, signed by Jacob F. Moerschel surety thereon. That contract was performed. Linhoff had no property. Jacob F. Moerschel was his father-in-law. Moerschel furnished the $3,000 that was paid when the contract was made. Linhoff and Moerschel borrowed of banks upon their promissory notes the $32,000, and Linhoff paid that amount over to the Messrs. Schultz, and he gave to H. E. Schultz, Sr., his two $10,000 notes signed by Jacob F. Moerschel as surety. When the various notes signed by Linhoff and Moerschel were collected Moerschel paid them, and Linhoff gave to Moerschel his individual notes for the amounts paid aggregating $50,000. Before these notes were given, the $3,000 Moerschel advanced when the contract was made and $2,000 that was indorsed on one of the notes to the bank had been paid out of the assets of the corporation. The notes aggregating the $50,000 were given at various dates between February 27, 1910, and February 12, 1913. Moerschel still holds all of these notes, except one for $8,000, which he gave to his daughter, Mrs. Linhoff, and for that note Linhoff substituted in February, 1915, the note of the old corporation made by himself as president. Mrs. Linhoff presented a claim against the new corporation for $8,000, based on this note, and Mr. Moerschel presented a claim for $42,000 and interest, founded on the other notes given to him by Linhoff. The court below disallowed these claims, aand Moerschel and Mrs. Linhoff have appealed.

Counsel for the appellants argue that these claims should have been allowed: (1) Because Moerschel loaned his money to and gave his security for the old corporation, and not to or for Linhoff; (2) because the old corporation and the new corporation assumed and agreed to pay

the debts to Mrs. Linhoff and Moerschel, evidenced by these notes; and (3) because, if the claims may not be allowed in full, Moerschel's claim for at least $12,404.40, which was paid by the Messrs. Schultz to discharge the debts of the old corporation soon after the $32,000 of the purchase price of the stock was paid over to the Messrs. Schultz by Linhoff, should be allowed. In support of this contention they call attention to these facts:

Linhoff controlled and managed the corporations after his purchase of the stock without let or hindrance by the other stockholders or by the boards of directors. Moerschel did not know of the written contract of purchase of the stock, he deemed the property and business of the Schultz store security for his obligations and loans, and recorded the notes he took of Linhoff on sheets in his account book under the head "Schultz Dry Goods & Carpet Co., Fr. J. Linhoff." Linhoff testified that he did not buy the shares, but that he bought the stock of goods, and the vendors turned over the shares of stock; that, as Moerschel took up the notes which he and Moerschel had given he gave Moerschel notes of the old corporation, signed by himself as president; that the Schultz Dry Goods & Carpet Company was bought with Moerschel's money; and that the money was not loaned to him personally. The bookkeeper of the new corporation testified that she copied from an old sheet that she found folded in one of the account books of the corporations a memorandum of the notes given by Linhoff to Moerschel, their dates, amounts, and the dates when the interest came due, and the copy she made was received in evidence. Linhoff paid the interest on all these notes until a short time before the adjudication of bankruptcy out of the assets of the corporation with its checks signed by himself.

But this, and other less material evidence tending to prove that Moerschel made his loan to and signed as surety on Linhoff's notes for the corporation, and not to and for Linhoff, cannot prevail over these indisputable facts. When first asked what he did at the time his son-in-law, Linhoff, became interested in the Schultz store in 1909 in the way of helping him out Moerschel answered:

"He came up here and wanted to go in business, and he bought it, and I promised to help him out, and I had to stick to it; he loaned some money from the banks, and I went security. I signed the notes."

When the $3,000 was paid, when the notes to the banks for the $32,-000 were made and the money borrowed on them was paid over to Mr. Schultz, Sr., and when the two $10,000 notes were made and delivered in March, 1909, the board of directors and officers of the corporation were, and until August 7, 1909, they continued to be the Messrs. Schultz. They were the only persons who could incur the liability of the corporation for borrowed money or for the sureties for the company, and they did not do so. The contract which evidenced the transaction which induced the payment of the $3,000 and the making of the notes of March, 1909, and the notes themselves, are in writing. The written contract is for a sale, not of the property of the corporation, but of the stock in the corporation, and it was in payment for the pur-

chase by Linhoff of that stock that he paid to Schultz the $3,000 he borrowed of Moerschel and the $32,000 he borrowed of the banks on his note, with Moerschel as surety, and gave him the two $10,000 notes signed by himself and Moerschel. Mr. Linhoff was mistaken in his testimony that, when Moerschel paid the indebtedness he had incurred as surety, he (Linhoff) gave Moerschel notes of the corporation signed by Moerschel as surety. All the notes but one are in evidence, and they are all signed by Frank J. Linhoff. There was no mistake in the finding of the court below that the loan which Moerschel made of his money and his credit in March, 1909, was to Linhoff, and not to the corporation.

As the original loan was made by Moerschel to Linhoff, and not to the corporation, and was evidenced by the individual notes of Linhoff, it was indispensable to the liability of the new corporation, the bankrupt, that there should have been some contract of novation or assumption of unpaid demands of Moerschel and Mrs. Linhoff to sustain their claims, and the burden was on them to prove such a contract. The court below was of the opinion that they had failed to bear this burden, and a careful reading of all the evidence has failed to convince of the contrary. It is true that the facts that Linhoff paid out of the assets of the corporation interest on his notes to Moerschel and on his note to his wife, and $5,000 on his debt to Moerschel, that the notes to Moerschel were listed on the sheet in one of the account books of the corporation, that Moerschel listed them under the name of the old corporation and Linhoff in his account book, and that Linhoff substituted for his $8,000 note, which Moerschel gave to his wife, the note of the old corporation in February, 1915, more than three years after that corporation had expired and nearly two years after the new corporation took its assets, tend to indicate either a reckless disregard of the distinction between the corporations and Linhoff, or the mental substitution of the former for the latter. But these facts are overcome by the probability that the payments were made by Linhoff out of any moneys upon which he could conveniently lay his hands, without special regard to or thought about corporate or individual ownership, in view of the fact that he owned 238 out of the 240 shares of the corporation; by the fact that no consideration was ever paid or agreed to be paid to either corporation for any undertaking by it to assume or pay Linhoff's debt to Moerschel or to his wife; by the fact that no substitution of corporate notes for the notes of Linhoff held by Moerschel, and no written agreement of assumption or payment thereof was ever made by either corporation; by the fact that as late as February, 1915, when Linhoff substituted the $8,000 note of the old and defunct corporation for his own note held by his wife, he had not yet conceived the notion that the new corporation had assumed that debt; and by the fact that in answer to an inquiry of Marshall Field & Co., a creditor of the new corporation, for a statement of its financial condition, Linhoff sent them, in a letter dated July 31, 1915, a statement of the assets and liabilities of that corporation on February 1, 1915, which set forth its debts to the amount of $26,877.18, but did not set out as debts of the cor-

poration any of the claims of Moerschel or Mrs. Linhoff, which amounted to $50,000. The conclusion is that no assumption of the payment of these claims of Moerschel and Mrs. Linhoff by the bankrupt corporation was established by the evidence.

Was Mr. Moerschel entitled to the allowance of his claim to the amount of $12,404.40? This claim rests on the contention that this much of the $55,000 which Linhoff borrowed of Moerschel in cash and credit was borrowed by him and loaned by Moerschel to him for the purpose of paying, and was used to pay, the debts of the corporation existing on February 27, 1909, when Linhoff bought its stock of Messrs. Schultz, and that, as the old corporation received the benefit of that much of the money loaned to Linhoff, Moerschel can maintain a claim in equity against the bankrupt therefor under the decisions in Leonard v. State Exchange Bank, 236 Fed. 316, 319, 149 C. C. A. 448, 451, Cherry v. City Nat. Bank, 144 Fed. 587, 75 C. C. A. 343, and Flower v. Commercial Trust Co., 223 Fed. 318, 138 C. C. A. 580. If Linhoff had borrowed this $12,404.40 of Moerschel for the benefit of the old corporation with the knowledge of all the parties, and with the understanding of all the parties that this money should be used to pay the debts of that corporation, that Linhoff should give his notes for it but the old corporation should pay the debt, and if under such an arrangement the $12,404.40 had been used to pay the debt of the old corporation, it may be that this claim could have been sustained. But that was by no means the transaction. The transaction was the purchase by Linhoff of the shares of stock in the corporation from Messrs. Schultz for $55,000, and the borrowing of that $55,000 in cash and credit of Moerschel by Linhoff, and the payment by Linhoff of all of it to the Messrs. Schultz for the stock. It is true that in the negotiations for the purchase of the stock, and in the fixing of the purchase price, $55,000, Messrs. Schultz and Linhoff estimated the property of the corporation to be worth $50,000, added $5,000 for good will, making $55,000, when they knew the debts of the corporation were $12,404.40, and that after the trade was closed, and after the $35,000 had been paid, Messrs. Schultz paid, either with some of the money thus paid to them or out of their own funds, the $12,-404.40 which the corporation owed.

It does not follow, however, from these facts, that the old corporation became indebted in equity to Moerschel for this $12,404.40, because all the money paid over to Messrs. Schultz became their money, and ceased to be either Linhoff's or Moerschel's, before any of the debts of the corporation were paid, and because those debts were paid by the Messrs. Schultz, and not by Linhoff or by Moerschel. If the corporation became indebted to any one on account of that payment, it was to the Messrs. Schultz, and not to Moerschel or Linhoff. The logical inference, however, from the facts proved, is that no indebtedness of the corporation to any one in law or in equity arose. The Messrs. Schultz controlled the corporation all the time while those debts were being paid. They owned its stock until they transferred it to Linhoff. They were morally, if not legally, liable for the debts of the corporation that had been incurred prior to that time, and it is evident that their purpose was not to create any liability of the cor-

poration, but to clear it of all debts and liabilities, so that there could never be any claim of the creditors of the corporation against them, either as officers or stockholders of the corporation on account of its obligations. To this end they fixed the price of their stock at the value of the assets of the corporation, regardless of its liabilities, received that price, and themselves paid all the existing liabilities, and the legal effect of the entire transaction was to leave the corporation free of all indebtedness either at law or in equity to Moerschel or Linhoff, or any other party. There is no equity in the claim of Moerschel for the $12,404.40, and it was rightly disallowed.

The order from which the appeal was taken must therefore be affirmed; and it is so ordered.